RuffiN, C. J.
 

 The Court is opinion, that the challenges were properly allowed. It is true, the statutes which give slaves the trial by jury in capital cases, do not ¡specify the qualifications of the jurors, farther than that
 
 *235
 
 they shall be owners of slaves; but only require that they shall be good and lawful men, and prescribe that the trial shall be conducted under the same rules, regulations and restrictions, as trials of free-men for a like offence.
 
 Rev. Stat.
 
 c. 111, s. 43, 45, 46. Yet the latter provisions arc sufficiently comprehensive to entitle the slave to all those privileges, which are intended to secure to an accused person a jury, indifferent between him and the State. It is clear the prosecutor, or one nearly related to him, would not bo a good.juror, if challenged for that cause by the prisoner. The application of the
 
 -principle,
 
 on which that rule stands, and on which the common law proceeds in forming juries in all cases, necessarily excludes the owner of the slave, or his son, and, by consequence, any other relation from sitting on the trial. The concern in interest or feeling of those persons in the result is inconsistent with that indiiferency, which the law seeks. If this slave were the subject of a civil action between his owner and another, neither of those persons could have been of the jury, on the score of their favor for their kinsman. The same state of feeling- prevents them from being held impartial on this trial; They are not “ good and lawful men,” in the sense of the statute. This is clear from the second proviso in the Act of 1793, c. 3S1, s. 7, being the first that gave the trial by jury to slaves in the County Court, which required, that the three justices and jury of slave-holders, who constituted the called Court, should “ not be connected with the owner of such slave, or the prosecutor, cither by affinity or consanguinity.”
 

 The counsel for the prisoner in this Court abandoned the objection taken in the Superior Court in arrest of judgment, that'the indictment concluded at common law: and very properly, as the statute did not create the oifenee, but only ousted clergy. But he took another, namely, that the indictment was bad, because it did not pursue the words of the Act and lay the robbery to have
 
 *236
 
 been “ in or near” the highway. It appeal's that it was once usual to frame indictments in that way at
 
 Newgale,
 
 as Lord Haue informs us. 1
 
 Hale P. G.
 
 535. But he certainly does not deem it necessary, nor, as is plain, strictly proper ; for he admits it violates the rule, which requires certainty in indictments and rather apologizes for it, as tolerated upon usage. The passage in which he cites a case from
 
 Trin.
 
 38,
 
 Hen.
 
 8, of an indictment of robbery in
 
 quadam via regia pedestri,
 
 being held bad, which was urged on us as an authority, that it should have been
 
 in vel props,
 
 does not turn upon the omission of the words,
 
 “vel props”
 
 but that of
 
 allam,
 
 because, as he says, ‘'it is not sufficient to say only
 
 via regia,
 
 or
 
 ivia regia pedestri, since
 
 the statute is touching a
 
 robbery
 
 on the King’s
 
 Highway.
 
 Moreover, there are many precedents of indictments not in the disjunctive, but laying the offence positively
 
 in
 
 the highway, and others laying jt
 
 near
 
 the highway.
 
 The King
 
 v.
 
 Slone,
 
 1 Tremaine 288, is an instance of the former, and that precedent is adopted by
 
 Dogherty,
 
 Cr. Cir. Com. 682; while
 
 Fowler’s case,
 
 which is stated by Mr.
 
 East, PI. G.
 
 785, is an instance of the latter. The more recent precedents in
 
 England
 
 do not aid us, as it not necessary now to state any place, because the statute 3 W. and M. took away clergy from all robberies. But the older ones, and the reason of the thing, make it plain, that an indictment, if good when it is
 
 in vel prope altam viam,
 
 is certainly so when it is in one count,
 
 in
 
 the highway, and in another
 
 near
 
 it.
 

 Per Curiam. Ordered to be certified accordingly.