Battle, J.
 

 The prisoner was indicted at common law for an alleged act of robbery from the person.
 

 This offence is defined to be
 
 “
 
 a felonious taking of money or goods of any value from the person of another, or in his presence, against his will, by violence, and putting him in fear.” 2 East. P. C., 707; Roscoe’s Cr. Ev., 890.
 

 It must be done
 
 animo furandi,
 
 with a felonious intent to appropriate the goods taken to the offender’s own use. Roscoe’s Cr. Ev., 895. Although a person may wrongfully take the goods, yet unless he intended to assume the property in them, and to convert them to his own use, it will amount to a trespass only, and not to a felony. 1 Hale’s P. C., 590. As an illustration of this principle, Mr. Roscoe cites a case which occurred in Scotland. A scuffle took place on the high road between the prosecutor and the prisoner,
 
 *154
 
 in the course of which the former was deprived of his hat, and a quantity of articles out of his pockets, which were aftewards found by the road side. But as it appeared that he was drunk at the time, and the articles might have been lost in the struggle, without any intent of felonious appropriation by the prisoner, the latter was acquitted. Roscoe’s Cr. Ev., 896, citing Alison’s Prin. Cr. Law of Scot., 358.
 

 From these authorities it is apparent that the distinction between robbery and forcible trespass is, that in the former there is, and in the latter there is not, a felonious intention to take the goods, and appropriate them to the offender’s own use. This rule of law seems plain enough, but there is often a doubt about its application, arising from the difficulty of ascertaining the true intent of the offender at the time of the taking. Now this intent is a question of fact, and must be submitted to the jury with such instructions from the court as the circumstances of each case may require.
 

 Upon the facts disclosed by the testimony in this case, the only ground which the counsel for the prisoner could take to show the want of a felonious intent was, that the prisoner was acting, or supposed that he was acting, under the orders of one J. W. Meares, who held, or was supposed to hold a military commission of some sort in the State service. The transaction was alleged to have occurred in March, 1865, which’was, as we know, before the termination of the late war. There was at that time, as we also know, a military organization in the State called the Home Guard. If the prisoner were acting in obedience to orders issued by the Captain of a company of that guard, or
 
 bona fide
 
 thought that he was acting under such orders, and in obedience to them took the prosecutor’s sword, not for the purpose of appropriating it to his own use, but solely with the view to disarm the prosecutor, he could not be held to have been guilty of robbery, no matter how wrongfully he
 
 *155
 
 may have acted. Under such circumstances the
 
 animus furandi
 
 would be as much wanting as it was in Hall’s case, 3 Car. & P., 409, (14 Eng. C. L. Rep., 337,) which is thus stated by Mr. Roscoe: — The prisoner had set wires in which game was caught. The game-keeper finding them, was carrying them away, when the prisoner stopped him, and desired him to give them up. The game-keeper refused, upon which the prisoner lifting up a large stick, threatened to beat out his brains if he did not deliver them. The keeper fearing violence delivered them. Upon an indictment for robbery, Vaughan, Baron, said: “I shall leave it to the jury to say, whether the prisoner acted under an impression that the wires and the pheasant were his own property ; for, however he might be liable to penalties for having them in his possession, yet if the jury think that he took them under a
 
 bona fide
 
 impression that he was only getting back the possession of his own property, there was no
 
 animusfurandi,
 
 and the prosecution must fail.” The prisoner was acquitted.
 

 It was for the purpose of invoking the application of this principle, that the prisoner’s counsel asked for the last instruction set forth in the bill of exceptions, to wit, that if the jury believes from the evidence that the prisoner acted under the orders of Meares, believing that he had a lawful military command, they should acquit, whether Meares was authorized to give such orders or not.
 

 The Judge declined to give the instruction, saying, “there was no evidence that Meares had any military authority, or that the prisoner acted under the belief that he had such authority.” In saying this we think his Honor erred.
 

 In looking over the testimony we find it stated by the prosecutor that Meares had been a Captain in the Home Guard, but was not so at the time of the alleged robbery; that the company had been disbanded, and Meares had then put himself at the head of a band of men who went about the country plundering and robbing. The same witness
 
 *156
 
 testified that the prisoner had freely and voluntarily made a confession to him, in which he had acknowledged that he was one of the party who took the sword, saying at the-same time “ that he acted under the orders of J. W. Meares.”' Here was, in our opinion, some evidence that Meares had a. military command at the time of the alleged robbery, and that the prisoner was acting under his orders. The transaction took place in March, 1865, and the testimony was given in October, 1866, and after an interval of nineteen months, in the midst of the anxieties and distractions attendant upon the close of a great civil war, there was certainly ground tor contending that the prosecutor was mistaken as to the time when Meares’ company of Home Guards was disbanded. This view is sustained by the fact that the prisoner and his associates did not demand anything but the sword, pistol and gun of the prosecutor, and took only the sword after learning that the pistol and gun had been carried off, telling the wife of the prosecutor that she need not be frightened as they did not intend to hurt her.
 
 We
 
 cannot, and do not, pretend to say that the testimony was sufficient to produce an acquittal of the prisoner, but we think it was sufficient to justify the counsel in asking that it should be submitted to the jury for their consideration. Had it been properly left to them, and they had decided it adversely to the prisoner, he would have had no cause for complaint; but as it was withheld from them, there was an error-committed, which entitles him to a
 
 venire de novo.