STATE v. J. L. BURKE.

Upon an indictment for "highway robbery," it is not necessary to prove both violence and putting in fear; either is sufficient.

Such indictment charging the robbery to have been committed "in the public highway," is sufficient, without specifying to what points the highway led.

It is not necessary to charge in such indictment the kind and value of the property taken; because force or fear is the main element of the offence.

Offences which were punishable with death at the time of the adoption of the present State Constitution, are now punishable under sec. 13 chap. 32, Bat. Rev.

INDICTMENT for highway robbery, tried before *Schenck, J.*, at Spring Term, 1875, RUTHERFORD Superior Court.

Only two witnesses were introduced, and both of these testi-fied on behalf of the State. W. A. Owens, the prosecutor, testified that he and his brother had been to Spartanburg, in the State of South Carolina, to market. That he went in a wagon, his brother, P. W. Owens, accompanying him. He was fifteen years of age, and his brother three or four years older. On the 25th day of November, 1874, he and his brother were returning along the public highway leading from Spartanburg to Rutherfordton, and at a point in Rutherford county, between eight and ten o'clock at night, the witness was in the wagon driving, and his brother walking. At that time the moon was shining brightly. Witness heard the defendant " holler," and then " defendant seemed to be trying to get into the wagon." Defendant then came in front of the wagon and caught the lines and stopped the oxen. After stopping the oxen, defen-dant asked them where they had been. Witness answered, and the defendant then asked what they got in Spartanburg, and other questions all of which they answered. The defen-dant then said that he had been robbed by some men sometime ago, and accused the witness and his brother of being the per-sons who robbed him. Witness and his brother denied this, saying that they had not been to the place at which defendant alleged he was robbed. The defendant then caught hold of the brother of the witness, and told him he had to go back to Spartanburg or with him, and his brother refused to go. " De-fendant then demanded our money, and said he intended to have our money or our lives, and if we attempted to go on he would shoot us." That his brother told him that he had no money. Defendant then said if we would give him one dol-lar, he would let us go ; and being still refused, he went to the fence and got a rail and put it across the road in front of the wagon, and said if we came up to it, he " would shoot out our hearts," and he asked us what we were going to do. I then told him, if he would let us go on home, I would give him a dollar. I then took out a one dollar United States Treasury note and handed it to him. He held it about a minute and

threw it down, saying it was only fifty cents; and he intended to have seven dollars. Defendant then caught hold on witness, and turned to his brother and jerked a switch out of his hand and broke it. His brother then said to witness, "throw me the axe out of the wagon." Witness threw the axe to his brother, and the defendant ran off in the old field, and they started off again. When they had gone about twenty steps, the defendant approached them again with rocks in his hand, and threw one at his brother, which struck him in the face and felled him to the ground. He threw another and struck him on the head and on the side. His brother was severely hurt. That he then threw at witness and struck him also.

Witness also testified that he gave the defendant the dollar because he was afraid of him, and that it was on the public highway. The money was the property of witness. He had sold some corn, which he raised, for four dollars and a half in Spartanburg, and the dollar was a part of that money.

P. A. Owen was introduced as a witness on behalf of the State, and corroborated the testimony of his brother, and exhibited the wounds he received from the defendant. The defendant's counsel asked his Honor to charge the jury as follows :

"That the acts of the defendant must have been such as to induce the prosecutor reasonably to believe that he was in danger of his life or great bodily harm, in order to make the prisoner guilty of robbery."

His Honor declined to charge, as requested, and charged the jury :

"That robbery was the fraudulent and felonious taking of the personal property of another by force or by putting him in fear, that if the act was committed at or near a public highway it then became highway robbery.

That in order to constitute robbery there must have been such a demonstration of force as was calculated to put the prosecutor in fear, and that it did actually put him in fear.

That if the defendant did make such a demonstration of

force and put the prosecutor in fear, and under that fear prosecutor gave him the United States Treasury note of the denomination of one dollar, and he kept it one minute, and that this occurred at or near a public highway in Rutherford county, he was guilty on the first count of highway robbery, and if the offence was not committed at or near a public highway, then it was simple robbery and the defendant was guilty on the second count.

That it was the duty of the State to satisfy their minds of the truth of all the material allegations which constitute the crime of robbery or highway robbery, and if the evidence did not so satisfy them they should acquit the prisoner."

The jury rendered a verdict of "guilty of highway robbery" on the first count. The counsel for the defendant then moved for a new trial. The motion was overruled and the counsel for the defendant then made a motion in arrest of judgment on the following grounds:

1. That the highway was not sufficiently described, that the bill of indictment ought to mention the points to which the highway led.

2. That the description of the money in the bill of indictment was defective.

The motion in arrest of judgment was overruled and the Court then sentenced the defendant to the State prison for fifteen years at hard labor.

The defendant again excepted because the Court sentenced the prisoner under sec. 13, instead of sec. 20, of chap. ... Battle's Revisal.

The exception was overruled, and the prisoner appealed.

*J. F. Hoke*, for the prisoner.

*Attorney General Hargrove*, for the State, insisted:

1. His Honor's charge was correct as to the definition of robbery. Bishop's Cr. L, vol. 11, 1103-1109, Battle's Revisal, chap. 32, sec. 19, Rev. Code, chap. 34, sec. 2 ... or

near a highway " sufficient. *State* v. *Anthony*, 7 Ired. 234, *State* v. *Cowan*, 7 Ired. 237.

2. Description of money sufficient. Battle's Revisal, chap. 32, sec. 19. *State* v. *Thomason*, 71 N. C. Rep., 146.

3. Penalty for highway robbery at the time of the adoption of the Constitution was death. Rev. Code, chap. 34, sec. 2, therefore sentenced under sec. 13.

BYNUM, J.  Robbery at the common law, is " the felonious taking of money or goods of any value from the person of another or in his presence against his will, by violence or putting him in fear." 2 *East Pl.* 707. From this definition of the books it is clear that the instructions asked for by the prisoner, as to what constitutes the crime of robbery, were properly refused, and that the instructions given by his Honor, were substantially correct, except where he erred in favor of the prisoner.

Unlike larceny, the gist of the offence in robbery is not in the taking, but in the force or terror used, and the rule is different in the two offences, both as to the value of the article taken and as to what constitutes a sufficient taking. Hence, when his Honor charged, in accordance with the fact proved, that if the prisoner kept the money in his hands, "one minute," it was a sufficient taking, although he then threw down the money and abandoned it, he was supported by all the authorities. Thus, where a lady was coming out of an Opera house and the prisoner snatched at her ear-ring and tore it from her ear and it fell into her hair where it was found on her return home, it was adjudged a sufficient taking to constitute robbery. *Rex* v. *Lapier*, 2 East. Pl. 557. And where the prisoner took the prosecutor's purse and immediately released it, saying, " if you value your purse you will please take it back again and give me the contents of it," and the prosecutor took it back, and the prisoner was apprehended at that moment, it was held a sufficient taking. *Rex* v. *Peal*, 1 Leach 228. Ros. Crim. Pl. 837. Nor is it necessary in this

offence, to prove both violence and the putting in fear, as his Honor charged. Either is sufficient. If the man is knocked down and lies insensible while the thief rifles his pockets, this is robbery though there is no putting in fear. And where there is no violence and fear becomes the essential ingredient, the law *in odium spoliatoris*, will presume it, where there appears just ground for it. 2 East. P. C. 711. *State* v. *Cowan*, 7 Ired. 239. But in our case there were both violence and the putting in fear.

Another exception is that his Honor charged that if the offence was committed at or near the public highway, it was highway robbery. In *Cowan's* case, the indictment charged that the robbery was committed *in* the highway, and it was there held that the offence must be proved as laid, and that it was incompetent to give evidence that the robbery was near the highway. Our statute, Rev. Code, ch. 34, sec. 2, makes the offence to consist in " robbing any person in or near any public highway." Without stopping to inquire whether an indictment following the very words of the statute and laying the offence "in or near" the public highway, would be good, it is sufficient to say, that the indictment in this case charges the offence to have been committed *in* the highway, which is the most precise and unobjectionable, if not the only proper way of laying it, instead of in the disjunctive. No evidence was offered that the robbery was near the highway, but the whole testimony was confined to the offence committed in the highway, the facts of which were not controverted. His Honor submitted the case to the jury upon a hypothesis which was not supported by any evidence, but unless it appears to the Court that the prisoner's case was prejudiced by it, a new trial cannot be awarded. No harm could possibly result to the prisoner from this inadvertence in the charge, because *all* the evidence was as to the occurrence *in* the road, and if the jury acted at all, it could only have been, upon what was in evidence If they believed the testimony the prisoner was guilty as charged in the indictment, and if they did not believe it, there

was nothing for them to go upon. Had there been any evidence given of a robbery *near* the highway, upon an indictment for robbery *in* the highway, the charge of the Judge would have been erroneous and the prisoner entitled to a new trial. The prisoner moved in arrest of judgment because the public highway was not sufficiently described in the indictment. The answer is, that the form adopted in this case, follows the ancient and approved precedents. However it might be in England, where there are several kinds of highways, the prisoner could not have been misled in this State, where there is but one kind of highway, which is well understood in the law and in fact, to be a public road, over which all citizens may go at will, on foot, on horse back, or in carts or carriages.

It was also moved in arrest of judgment, that the money or property taken, was not sufficiently described in the indictment. This is not an open question, for in the *State* v. *Thompson*, 71 N. C. 146, which was a case of larceny, the property stolen was of the same kind, and was described in the same way, as in this indictment, and it was held to be sufficient. In robbery the kind and value of the property is not material, because force or fear is the main element of the offence. Thus, where a man was knocked down and his pockets rifled, but the robbers found nothing except a slip of paper containing a memorandum, an indictment for robbing him of the paper, was held to be maintainable. *Rex* v. *Bingley* 5, C. & P. 602.

The last exception of the prisoner is, that the Court sentenced him under the provisions of chap. 32, sec. 13, Bat. Rev. instead of the 29th section of the same chapter. The 13th section provides for the punishment of persons convicted of crimes which were punishable with death, by the laws existing at the time the present Constitution went into effect. The 29th section provides for the punishment of offences which were punishable with public whipping or other corporal punishment, at the time the present Constitution went into effect.

Robbery in the public highway, was a capital felony, at that time, and is the subject of punishment under the 13th section of the statute.

There is no error.

Per Curiam.                      Judgment affirmed.