STATE OF NORTH CAROLINA v. WALTER THOMAS LAWRENCE.

(Filed 12 June 1964.)

**1. Robbery § 1—**

Robbery is the taking of money or goods with felonious intent from the person of another, or in his presence, against his will, by violence or putting him in fear, and the felonious intent with respect to the law of robbery is the intent to deprive the owner of his goods and to appropriate them to the defendant's own use.

**2. Robbery § 5—**

In defining robbery as the felonious taking of personal property from the person of another, or in his presence without his consent, against his will, by violence or putting him in fear, it is proper for the court to explain to the jury that the felonious intent is the intent on the part of the taker to deprive the owner of his property permanently and to convert it to the use of the taker, and the failure of the court to do so must be held for prejudicial error when defendant introduces evidence that the taking amounted only to a forceful trespass. Further, an instruction that "taking unlawfully" would support conviction, is error.

APPEAL by defendant from *Morris, J.,* October 1963 Session of GATES.

This is a criminal action in which defendant is charged with robbery and felonious assault.

The State's version of the occurrence giving rise to the prosecution is as follows: On 6 April 1963 the prosecuting witness, Glenn M. Wimbley, a member of the U. S. Marine Corps, was en route from Camp Lejeune to Norfolk. He was dressed as a civilian. The car in which he was riding developed mechanical trouble in Washington, N. C. While he was walking along a street a car stopped and the occupants invited him to ride. He accepted. Defendant Walter Thomas Lawrance was driving; the other passenger was Noah Lawrence. At Windsor defendant and Wimbley purchased whisky — all three took a drink. They then proceeded toward Norfolk and Wimbley fell asleep. About "dusk dark" he was awakened by the jolting of the car which came to a stop on a dead-end road in Gates County. Noah commenced hitting Wimbley with his fists. The latter disengaged himself and attempted to run, but Noah overtook him and caught him by the sweater. Defendant came up and began striking Wimbley with his fists. Defendant said, "You owe me something." Wimbley replied, "What do I owe you . . . I would be glad to pay you." Defendant answered, "That's O. K., I'll get it myself." Defendant forcibly seized Wimbley's wallet and took some money from it. The assault continued and Wimbley was struck on the head by his assailants with bottles. He managed to make his escape to a nearby farm house. Defendant and Noah Lawrence drove away.

Defendant offered no evidence.

Verdict of the jury: Guilty of robbery. Judgment: Prison sentence.

*Attorney General Bruton and Assistant Attorney General Sanders for the State.*

*Philip P. Godwin and Gerald F. White for defendant.*

MOORE, J. Defendant assigns as error portions of the judge's charge defining robbery and applying the legal elements of the offense to the facts in evidence.

In the preliminary explanation of the law with respect to robbery the judge stated to the jury: "Robbery, gentlemen of the jury, is the felonious taking of the personal property from the person of another, or in his presence, without his consent or against his will, by violence, intimidation or putting him in fear."

Robbery, as distinguished from robbery with firearms or other dangerous weapons (G.S. 14-87), is strictly a common law offense and is not defined by statute. Common law robbery (the offense with which defendant is charged in the indictment) is defined and explained by Sir William Blackstone as follows: "Open and violent larceny from the *person,* or *robbery,* the *rapina* of the civilians, is the felonious and forcible taking, from the person of another, of goods or money to any value, by violence or putting him in fear. 1. There must be a taking, otherwise it is no robbery. . . . 2. It is immaterial of what value the thing taken is . . . 3. Lastly, the taking must be by force, or a previous putting in fear . . . This previous violence, or putting in fear, is the criterion that distinguishes robbery from other larcenies . . . it is enough that so much force, or threatening by word or gesture, be used, as might create an apprehension of danger, or induce a man to part with his property without or against his consent." Chitty's Blackstone (19th London Ed., 1857), Book IV, Ch. XVII, pp. 242-244.

Common law robbery has been repeatedly and consistently defined by this Court in accordance with the Blackstone definition. *State v. Stewart,* 255 N.C. 571, 572, 122 S.E. 2d 355; *State v. McNeely,* 244 N.C. 737, 741, 94 S.E. 2d 853; *State v. Sipes,* 233 N.C. 633, 635, 65 S.E. 2d 127; *State v. Bell,* 228 N.C. 659, 662, 46 S.E. 2d 834; *State v. Holt,* 192 N.C. 490, 492, 135 S.E. 324; *State v. Brown,* 113 N.C. 645, 647, 18 S.E. 51; *State v. Burke,* 73 N.C. 83, 87. The phraseology most often employed is, "Robbery at common law is the felonious taking of money or goods of any value from the person of another, or in his presence, against his will, by violence or putting him in fear." However, there are some slight but immaterial variations in the language used in the cases.

STATE *v.* LAWRENCE.

There was formerly more severe punishment if it was alleged and proven that the offense was committed on or near a public highway. Blackstone comments: "This species of larceny is debarred of the benefit of clergy by statute 23 Hen. VIII, c. 1, and other subsequent statutes, not indeed in general, but only when committed in a dwelling-house, or in or near the king's highway. A robbery therefore in a distant field, or footpath, was not punished with death; but was open to the benefit of clergy, till the statute 3 & 4 W. & M. c. 9, which takes away clergy from both principals and accessories before the fact, in robbery, wheresoever committed." These statutes were repealed by 7 & 8 G. IV, c. 27. Until a relatively recent date robbery in or near a public highway (highway robbery) was a capital offense in North Carolina. *State v. Johnson,* 61 N.C. 140 (1866); *State v. Anthony,* 29 N.C. 234 (1847). But the distinction between robbery and highway robbery, as to punishment and otherwise, is no longer recognized in this jurisdiction — the punishment is imprisonment in the State's prison for a term not to exceed 10 years. G.S. 14-2; *In re Sellers,* 234 N.C. 648, 68 S.E. 2d 308. But see G.S. 14-87; G.S. 14-88; G.S. 14-89; G.S. 14.89.1.

The excerpt from the charge, quoted above, of the trial judge in the instant case is in accord with the definition of common law robbery approved by this Court. Defendant agrees that this is so, but contends that the phrase "felonious taking," without further explanation, is insufficient to inform the jury of the specific felonious intent requisite to constitute robbery in a forcible taking, and that it is error for the judge, in applying the law to the facts (G.S. 1-180), to fail to explain in certain and, to a layman, understandable terms the essential felonious intent implicit in the expression "felonious taking." We think that the question raised is of sufficient importance to warrant a re-examination of robbery cases involving jury instructions with respect to the elements of robbery and especially those dealing with felonious intent as an element.

*State v. Sowls,* 61 N.C. 151, is a leading case. By force and intimidation defendant took a sword from a house against the will of the occupants. He stated that he was acting under orders of the captain of the Home Guard, the sword was taken for the purpose of disarming prosecutor and not to appropriate it. The act was committed in 1865 during the War between the States; the case was tried in 1866 after the surrender. The trial judge refused defendant's request that he instruct the jury that it was only a case of forcible trespass, but charged the jury that they could not convict unless they were satisfied beyond a reasonable doubt that the taking and carrying away was with a "felon-

ious intent." He "explained that the taking and carrying away are felonious, where the goods are taken against the will of the owner . . ., or where possession is obtained either by force, or surprise, or by trick . . ., and where the taker intends in any such case fraudulently to deprive the owner of his entire interest in the property, against his will." On appeal a *new trial* was awarded. The Court, after giving the common law definition of robbery, said: "It must be done *animo furandi,* with a felonious intent to appropriate the goods taken to the offender's own use. Roscoe's Cr. Ev., 895. Although a person may wrongfully take the goods, yet unless he intended to assume the property in them, and to convert them to his own use, it will amount to trespass only, and not to a felony. 1 Hale's P. C., 590." Further: ". . . it is apparent that the distinction between robbery and forcible trespass is, that in the former there is, and in the latter there is not, a felonious intention to take the goods, and appropriate them to the offender's own use . . . Now this intent is a question of fact, and must be submitted to the jury with *such instructions* from the court as the circumstances of each case may require."

It was stated in *State v. Deal,* 64 N.C. 270, that "If one takes the property of another, it is a mere trespass . . .; if *manu forti,* the owner being present, it is a forcible trespass . . . If the taking be with a felonious intent, the act is larceny, either stealing, or robbery. So it turns upon the felonious intent . . ."

In *State v. Curtis,* 71 N.C. 56, defendant was charged with robbery, and there was a special verdict. The facts found were equivocal on the question of intent. A new trial was ordered that a jury might find whether the taking was with a felonious intent. The Court said: "In the case before us the special verdict states what was done, but the intent is not stated. And it is very evident that that was the difficulty they had in coming to a general verdict. They could not satisfy themselves as to the intent. Was it the purpose to steal, or was it a Christmas frolic. Now that is not a question of law, but it is a question of fact which the jury ought to have found."

*State v. Burke, supra,* turns on the questions of taking and asportation — intent is only indirectly involved. Defendant stopped the prosecuting witness on a road at night and accused the latter of having robbed him. When the prosecuting witness denied the accusation, defendant demanded money and by means of assault, threats and intimidation caused the prosecuting witness to give him a dollar. Defendant threw the money on the ground and said he would have to have seven dollars. After further effort to procure money defendant departed leaving the dollar on the ground. There was a prayer for special instruc-

tions which the trial judge refused to give. On appeal, this Court de-fined robbery according to the common law definition, and said: "Unlike larceny, the gist of the offense in robbery is not in the taking, but in the force and terror used . . . Hence, when his Honor charged . . . that if the prisoner kept the money in his hands, 'one minute,' it was a sufficient taking . . ., he was supported by all of the authorities." We do not understand from the holding in this case that the taking and the intent were considered unimportant; the case stands for the proposition that if the force or putting in fear was enough to cause the prosecuting witness to surrender possession of his property, other elements being present, the taking was sufficient and the crime complete.

In *State v. Nicholson*, 124 N.C. 820, 32 S.E. 813, the following instruction was approved: "If the jury find from the evidence beyond a reasonable doubt . . . the defendant assaulted the prosecuting witness, H. A. Lowery, and put him in fear, and that the prosecuting witness surrendered his pistol, watch and money through fear of bodily injury, to the defendant and that the defendant took through such fear from the possession of the prosecuting witness said pistol, watch and money, and carried them away, and that the defendant did this *feloniously, that is with the intent to deprive the owner of the goods and appropriate them to the defendant's own use,* the jury will find the defendant guilty of robbery as charged in the bill of indictment. If the defendant won the property in question playing cards, and did not take the property in a felonious manner, he could not be guilty under this bill." (Emphasis added).

*State v. Lunsford*, 229 N.C. 229, 49 S.E. 2d 410, is a more recent case dealing directly with the matter of intent. The prosecuting witness Maney on a Saturday afternoon had in possession and displayed a pistol in a cafe. He went to the rest room where defendants forcibly took the pistol from him and carried it away. Defendant Lunsford surrendered the pistol to the arresting officers the following day, Sunday. Defendants' version of the occurrence was that Maney was intoxicated, displayed the pistol in the cafe, came into the rest room where defendants were, got into an argument with Lunsford, drew the pistol and pointed it at Lunsford; defendants took the pistol from Maney to prevent him from shooting Lunsford, and told Maney they would leave the pistol at the cafe on Monday and he could get it there. Defendants were convicted of robbery. On appeal they insisted that the "trial judge erred in failing to instruct the jury as to the felonious intent essential to the crime of robbery." This Court granted a new trial and said:

"Writers upon criminal law often suggest that robbery is merely an aggravated form of larceny. 54 C.J., Robbery, section 11. It has been defined with accuracy and clarity as 'the taking, with intent to steal, of the personal property of another, from his person or in his presence, without his consent or against his will, by violence or intimidation.' Miller on Criminal Law, section 123. This definition clearly comports with that sanctioned by our cases. *S. v. Bell*, 228 N.C. 659, 46 S.E. (2d), 834; *S. v. Burke*, 73 N.C. 83.

"In his charge in the case at bar, the trial judge told the jury with commendable correctness that a person cannot be guilty of robbery in forcibly taking property from the person or presence of another unless the taking is with felonious intent. But he inadvertently failed to explain to the jurors, who were unfamiliar with legal standards, what constitutes the requisite felonious intent in the law of robbery. In the absence of any instruction from the court on this aspect of the case, the jury was necessarily forced to resort to its own notions for the significance of this element of the offense when it passed upon the all-important issue as to whether the defendant acted with felonious intent in taking the pistol from the prosecuting witness.

"Inasmuch as an intent to steal is an essential element of the crime of robbery, the judge ought to have told the jury that in robbery, as in larceny, the taking of the property must be with a specific intent on the part of the taker to deprive the owner of his property permanently and to convert it to his own use. S. v. Sowls, 61 N.C. 151; *S. v. Kirkland*, 178 N.C. 810, 101 S.E. 560; 54 C.J., Robbery, section 49. It is plain that the judge failed to perform his statutory duty to declare and explain the law as to this substantial feature of the case. G.S. 1-180; *Lewis v. Watson, ante,* (229 N.C.) 20, 47 S.E. (2d), 484."

The charge in *State v. Chase*, 231 N.C. 589, 58 S.E. 2d 364, was held to be erroneous for the reason that the judge instructed the jury that they might return a verdict of guilty of common law robbery even if they found that the taking was without felonious intent.

*State v. Rogers*, 246 N.C. 611, 99 S.E. 2d 803, involves the judge's charge, which included the common law definition of robbery without any further explanation of the phrase "felonious taking." The bill of indictment charged robbery with a dangerous weapon. No question was raised with respect to the sufficiency of the charge on the matter of felonious intent. This Court declared: "The vice of this instruction

is that it directed the jury to return a verdict of guilty of armed robbery as charged in the bill of indictment upon a mere finding that he (defendant) was guilty of common law robbery." This opinion should not be considered as authority for legal propositions which it did not discuss and with which it does not deal.

An essential element of the offense of common law robbery is a "felonious taking," *i.e.,* a taking with the felonious intent on the part of the taker to deprive the owner of his property permanently and to convert it to the use of the taker. A failure to so explain to the jury is error. This is especially true when the evidence will permit a finding that the taking was without felonious intent as, for example, where there may have been only a forcible trespass (*State v. Sowls, supra*) or defensive action (*State v. Lunsford, supra.*)

In the instant case defendant and the prosecuting witness had been drinking. Defendant told prosecuting witness that he owed him something and he (defendant) would get it himself. In the light of all of the circumstances disclosed by the State's evidence, a contention by defendant that his actions amounted only to a forcible trespass may seem unreasonable indeed, but the weight and reasonableness of the evidence is for the jury, and defendant has the right to have the jury consider the case in accordance with his theory of the legal effect of his acts if his theory is supported by any permissible inference to be drawn from the evidence. *State v. Guss,* 254 N.C. 349, 118 S.E. 2d 906. The learned judge inadvertently failed to give a legal explanation of the term "felonious taking," and to apply it to the facts. This was error which entitles defendant to a new trial.

The judge was guilty of another inadvertence when he came to apply the law to the facts. He charged: "I instruct you that if the State of North Carolina has satisfied you from the evidence in this case and beyond a reasonable doubt that on the 6th day of April, 1963, the defendant, Walter Thomas Lawrence did take *unlawfully* from the person of Glenn M. Wimbley personal property without his consent or against his will, by violence, intimidation or putting him in fear by use of force, whether the same be actual or constructive, it would be your duty to return a verdict of guilty of robbery." "Taking unlawfully" is not synonymous with "felonious taking." A forcible trespass is an *unlawful* taking.

Defendant was acquitted on the second count in the bill charging an assault, which allegedly took place after the robbery. The retrial will be only upon the first or robbery count.

New trial.