IN THE SUPREME COURT OF NORTH CAROLINA

No. 94PA19

Filed 14 August 2020

STATE OF NORTH CAROLINA

v.

JAMES A. COX

Appeal pursuant to N.C.G.S. § 7A-31 from the published decision of a unanimous panel of the Court of Appeals, 264 N.C. App. 217, 825 S.E.2d 266 (2019), finding error and reversing a judgment entered on 16 January 2018 by Judge William W. Bland in the Superior Court, Onslow County. Heard in the Supreme Court on 4 May 2020.

> *Joshua H. Stein, Attorney General, by Daniel P. O'Brien, Special Deputy Attorney General, for the State.*
>
> *Glenn Gerding, Appellate Defender, and Andrew DeSimone, Assistant Appellate Defender, for defendant-appellee.*

MORGAN, Justice.

In this case we must determine whether the trial court erroneously denied defendant's motion to dismiss the charge of conspiracy to commit robbery with a dangerous weapon and the charge of felonious breaking or entering at the close of all of the evidence. In light of our conclusion that the State presented sufficient evidence at defendant's trial to show that defendant possessed the requisite felonious intent necessary to support defendant's convictions of each of these charged offenses, we find

no error in the trial court's ruling. Accordingly, we reverse the decision of the Court of Appeals and reinstate these convictions.

*Factual and Procedural Background*

At trial, the State's evidence tended to show that on 8 August 2015, defendant and his girlfriend Ashley Jackson went to the home of Richard Linn. Prior to this date, defendant had given $20.00 to Linn so that Linn could purchase, *inter alia*, Percocet tablets on behalf of Jackson. These tablets constituted a prescription medication which neither defendant nor Linn could legally possess. After receiving the $20.00 amount of funds from defendant, Linn contacted Angela Leisure to obtain the controlled substances sought by defendant, added some of Linn's own money to defendant's $20.00 amount, and ultimately gave Leisure an amount of funds between $50.00 and $60.00 for the purchase of drugs. While Leisure had operated as a regular "go-between" for Linn in his past efforts to acquire illicit controlled substances, on this occasion, Leisure neither obtained the illegal drugs which were requested by Linn nor returned any of the drug purchase money to him.

Upon arriving at Linn's residence on 8 August 2015, defendant displayed a gun to Linn and demanded that Linn accompany defendant and Jackson in going to Leisure's house "to talk with her about their money." Defendant, Jackson, and Linn went to Leisure's home by vehicle. When they arrived, Leisure's boyfriend Daniel McMinn was standing outside of Leisure's residence. Defendant, Jackson, and Linn

entered Leisure's home, followed by McMinn. Once inside, Jackson pulled Leisure's hair, punched her, and forced her to the floor, demanding "their money." McMinn started to call the police, but he stopped when defendant displayed a handgun "in a threatening way." After a few minutes, Linn told Jackson to stop her assault on Leisure, saying: "I think she's had enough." As defendant, Jackson, and Linn departed Leisure's residence, defendant kicked a hole in the front door of Leisure's home and fired a shot into the residence, striking a mirrored door inside the home. Defendant, Jackson, and Linn did not obtain money or any personal property from Leisure's home.

Based on the events of 8 August 2015, defendant was arrested and charged with first-degree burglary, conspiracy to commit robbery with a dangerous weapon, and discharging a weapon into an occupied property.

Following the State's presentation of its evidence at trial, defendant moved to dismiss the charges against him for insufficiency of the evidence. After the motion was denied, defendant presented evidence in his defense, including his own testimony. Defendant testified that he went to Linn's home on 8 August 2015 to give Linn $20.00 to purchase pain relievers for Jackson, and that later in the day, Linn had asked defendant to transport Linn to Leisure's home because Leisure had taken the $20.00 but then would not answer Linn's telephone calls. According to defendant, Linn said that Linn would get defendant's money back during an in-person encounter with Leisure. In his testimony, defendant claimed that neither he, Jackson, or Linn

had a weapon during the encounter on 8 August 2015 and stated that it was Jackson rather than defendant who had kicked the front door at Leisure's home. At the close of all of the evidence, defendant renewed his motion to dismiss the charges against him. The trial court denied the motion.

After instructing the jury regarding the charges and the pertinent law in the case, the trial court further provided the jury with written copies of the jury instructions. After deliberating for approximately two hours, the jury submitted two questions to the trial court, each relating to the conspiracy to commit robbery charge: (1) "Can we get clarification of 'while the defendant knows that the defendant is not entitled to take the property,'" [with regard to the definition in the jury instructions on Conspiracy to Commit Robbery with a Dangerous Weapon] and (2) "Is it still Robbery to take back . . . one owns [sic] property?" After conferring with all counsel, and specifically without any objection from defendant, the trial court declined to answer the jury's questions and instead referred the jury to the written jury instructions which the trial court had previously provided to it.

On 16 January 2018, the jury returned guilty verdicts against defendant on the charges of conspiracy to commit robbery with a dangerous weapon, felonious breaking or entering, and discharging a weapon into an occupied property. The trial court sentenced defendant to a consolidated term of 60–84 months of incarceration for the offenses of conspiracy to commit robbery with a dangerous weapon and discharging a weapon into an occupied property. For the felonious breaking or

entering offense, defendant received a suspended sentence of incarceration of 6–17 months and was placed on supervised probation for a term of 24 months. Defendant appealed to the Court of Appeals.

The Court of Appeals reversed defendant's conviction for conspiracy to commit robbery with a dangerous weapon. Although on appeal defendant did not contest his conviction for discharging a weapon into an occupied property, nonetheless the lower appellate court remanded the case in which defendant was convicted of discharging a weapon into an occupied property for resentencing because it was consolidated for judgment with the conspiracy to commit robbery with a dangerous weapon conviction, which the Court of Appeals decided to reverse. The court below also reversed defendant's conviction for felonious breaking or entering and remanded the matter in order for the trial court to arrest judgment with respect to this felony conviction and to enter judgment against defendant for misdemeanor breaking or entering. In reversing defendant's conviction for the offense of conspiracy to commit robbery with a dangerous weapon, the Court of Appeals relied upon our decision in *State v. Spratt*, 265 N.C. 524, 144 S.E.2d 569 (1965) and its predecessor cases in concluding here that defendant could not be guilty of conspiracy to commit robbery with a dangerous weapon because defendant did not have the required felonious intent when attempting to take property from Leisure under a bona fide claim of right to the money which she had been given on defendant's behalf. Concomitantly, the Court of Appeals held that the lack of felonious intent on the part of defendant negated his

ability to be convicted of the offense of felonious breaking or entering; however, since misdemeanor breaking or entering is a lesser-included offense of felonious breaking or entering, and since the lesser offense contains all of the elements of the greater offense except for felonious intent, the lower appellate court reasoned that the jury's determination that defendant had committed an offense of breaking or entering would, under these circumstances, be converted to the commission of a misdemeanor breaking or entering offense by defendant.

The State sought a temporary stay of the operation of the mandate of the Court of Appeals, which we allowed on 22 March 2019. On 9 April 2019, the State filed a petition for discretionary review, seeking to be heard by this Court on the issue of whether the Court of Appeals erred by reversing defendant's convictions for the offenses of conspiracy to commit armed robbery and felonious breaking or entering on the basis of insufficiency of the evidence. On 17 April 2019, defendant filed a response to the State's petition for discretionary review, as well as his conditional petition for discretionary review. On 14 August 2019, we allowed the State's petition for discretionary review, issued a writ of supersedeas, and denied defendant's conditional petition for discretionary review.

*Analysis*

The test for sufficiency of the evidence in a criminal prosecution is well-established. "[T]he trial court must consider the evidence in the light most favorable

to the State, giving the State the benefit of every reasonable inference. If there is substantial evidence of each element of the offense charged or lesser included offenses, the trial court must deny defendant's motion to dismiss as to those charges supported by substantial evidence and submit them to the jury for its consideration; the weight and credibility of such evidence is a question reserved for the jury." *State v. Williams*, 330 N.C. 579, 584, 411 S.E.2d 814, 818 (1992) (citations omitted).

Criminal conspiracy is an agreement between two or more persons to do an unlawful act or to do a lawful act in an unlawful way or by unlawful means. *State v. Arnold*, 329 N.C. 128, 142, 404 S.E.2d 822, 830 (1991). Therefore, in the present case, the State had the burden to present substantial evidence tending to show that defendant and Jackson agreed to commit each element of robbery with a dangerous weapon against Leisure.

For the offense of robbery with a dangerous weapon, the State must prove three elements: (1) the unlawful taking or attempt to take personal property from the person or in the presence of another; (2) by use or threatened use of a firearm or other dangerous weapon; (3) whereby the life of a person is endangered or threatened. *State v. Wiggins*, 334 N.C. 18, 35, 431 S.E.2d 755, 765 (1993); N.C.G.S. § 14-87(a) (2019). The taking or attempted taking must be done with felonious intent. *State v. Norris*, 264 N.C. 470, 472, 141 S.E.2d 869, 871 (1965) (citing *State v. Lawrence*, 262 N.C. 162, 163–68, 136 S.E.2d 595, 597–600 (1964)). "Felonious intent is an essential element of the crime of robbery with firearms and has been defined to be the intent to deprive

the owner of his goods permanently and to appropriate them to the taker's own use." *State v. Brown*, 300 N.C. 41, 47, 265 S.E.2d 191, 196 (1980).

In the present case, the Court of Appeals has been persuaded by defendant's contention, citing our holding in *Spratt*, that a person cannot be guilty of robbery if he or she forcibly takes personal property from the actual possession of another under a bona fide claim of right or title to the property, since such a bona fide claim negates the requisite felonious intent required for the offense of robbery with a dangerous weapon. The State, however, argues that the law does not permit a person to use violence to collect on a perceived debt for illegal drugs.

In the opinion which it rendered in this case, the Court of Appeals exercised studious review of our decisions in *Spratt* and *Lawrence*, as well as other appellate decisions which it considered to involve issues which are similar to those which exist in the present case. The lower appellate court went on to conclude that it "remain[ed] bound to follow and apply *Spratt*" in the resolution of this case.

In *Spratt*, the defendant entered a convenience store, brought items of merchandise to the cashier's counter for apparent purchase, and when the cashier opened the cash register at the counter to conduct the transaction, defendant put his hand in the cash register drawer in which money was located. Defendant wielded a pistol, told the cashier "it was a stickup," demanded the money, and reached for it. The cashier was able to foil defendant's effort to obtain the money from the store's

cash register, and defendant left without the money. Defendant was charged with the offense of attempt to commit armed robbery and was found by a jury to be guilty of the charged crime. In this Court's issued opinion in which no error was found in defendant's conviction upon his appeal, we discussed the concept of felonious intent, noting that it is an essential element of the offense of attempt to commit armed robbery. In this Court's discussion of felonious intent in *Spratt*, we cited *Lawrence* for the proposition that

> where the evidence relied on by defendant tends to admit the taking but to deny that it was with felonious intent, it is essential that the court fully define the 'felonious intent' contended for by the State and also explain defendant's theory as to the intent and purpose of the taking, in order that the jury may understandingly decide between the contentions of the State and defendant on that point . . . . For instance, as in *Lawrence*, defendant may contend that his conduct in taking the property amounts only to a forcible trespass.

265 N.C. at 526, 144 S.E.2d at 571 (citation omitted).

In the course of our discussion of the role of the element of felonious intent in different criminal offenses and our rumination about the courts' assessment of the element of felonious intent in light of different theories of criminal culpability in *Spratt*, we offered the following observation which the Court of Appeals mistakenly treats in the instant case as our dispositive holding in *Spratt*:

> A defendant is not guilty of robbery if he forcibly takes personal property from the actual possession of another under a bona fide claim of right or title to the property, or

> for the personal protection and safety of defendant and others, or as a frolic, prank or practical joke, or under color of official authority.

*Id.* at 526–27, 144 S.E.2d at 571.

The defendant in *Lawrence*—the case which *Spratt* primarily relies on in its discussion of felonious intent—was the operator of a motor vehicle who offered a ride to the prosecuting witness Wimbley, a member of the United States Marine Corps who was dressed in civilian clothes on this occasion, as Wimbley walked along the street after his own motor vehicle experienced mechanical failure. Wimbley accepted the offer of a ride and joined the defendant and a passenger in the vehicle. During the journey, the defendant and Wimbley bought some whiskey with all three individuals consuming some of it. Later, the defendant stopped the vehicle on a dead-end road with defendant and his original passenger both striking Wimbley with their fists. The defendant said to Wimbley, "You owe me something," to which Wimbley replied, "What do I owe you . . . I would be glad to pay you." The defendant then said, "That's okay, I'll get it myself," and then forcibly seized Wimbley's wallet and removed money from it. The defendant was charged with the offenses of robbery and felonious assault. A jury found the defendant guilty of robbery. On appeal, this Court determined that the defendant was entitled to a new trial because the trial court erred by instructing the jury to determine if there was an unlawful taking rather than giving a legal explanation of the term "felonious taking" and directing the jury to apply it to the facts. *Lawrence*, 262 N.C. at 168, 136 S.E.2d at 600. This conclusion

was reached upon our evaluation of the defendant's contention in *Lawrence* that his actions amounted only to a forcible trespass, a crime which required an unlawful taking but no felonious intent, which he had the right to have a jury to consider upon proper instructions. *Id.*

This review of the respective facts, analyses, and outcomes of the two cases decided by this Court upon which the Court of Appeals expressly relies in its decision in the present case—*Spratt* and *Lawrence*—serves to place them in proper context and assist in determining how they apply in this case. While we recognized in *Spratt* the pivotal nature of felonious intent as an element of the offense of attempt to commit armed robbery, the defendant in *Spratt*, in attempting to take money from a convenience store's cash register while employing a firearm, was not attempting to forcibly take personal property from the actual possession of another under a bona fide claim of right or title to the property—as defendant contends that defendant was undertaking in the instant case in attempting to obtain money that he considered to belong to him from Leisure. This distinction between *Spratt* and the current case renders *Spratt* inapplicable here, including the passage from our opinion in *Spratt* which this Court intended to be illustrative and which the Court of Appeals construed here to be dispositive. *Lawrence*, the predecessor of *Spratt*, is distinguishable from, and hence inapplicable to, the present case in that, although the element of felonious intent constituted an issue in *Lawrence* just as it does in the present case, the position adopted by defendant in *Lawrence* rested on an alternative and lesser measure of

criminal culpability regarding the intent which he harbored concerning the money, while the position adopted by defendant in the instant case fully rests on a total lack of criminal culpability regarding the intent which he harbored concerning the money. Significantly neither *Spratt*, nor *Lawrence*, nor any other case in this state has heretofore authorized a party to legally engage in "self-help" by virtue of the exercise of a bona fide claim of right or title to property which is the subject of an illegal transaction. Here, defendant was involved with other individuals in an effort to regain money which was the subject of an illegal transaction involving the purchase of controlled substances.[1] In this regard, the Court of Appeals has erroneously extended beyond existing legal bounds the right of a party to engage in "self-help" and to forcibly take personal property from the actual possession of another under a bona fide claim or right to the property. Accordingly, with regard to the trial court's denial of defendant's motion to dismiss the charge of conspiracy to commit robbery with a dangerous weapon, we conclude that the trial court did not err.

We likewise hold that the trial court reached a correct ruling with respect to defendant's motion to dismiss the charge of felonious breaking or entering. "The essential elements of felonious breaking or entering are (1) the breaking or entering (2) of any building (3) with the intent to commit any felony or larceny therein."

---

[1] Indeed, the nature of defendant's transaction and agreement with Leisure means that determining the existence of a bona fide claim would likely require the application of commercial law principles to an illegal drug deal. We cannot imagine that the common law tradition or the General Assembly would require such an approach.

*Williams*, 330 N.C. at 585, 411 S.E.2d at 818. As already discussed, the trial court properly denied defendant's motion to dismiss the charge of conspiracy to commit robbery with a dangerous weapon because the record contained evidence tending to show that defendant possessed the requisite felonious intent to support the charge. Since both of the issues presented to this Court concern whether defendant possessed the same requisite felonious intent necessary to support both of his convictions, we conclude that the trial court also properly denied defendant's motion to dismiss the charge of felonious breaking or entering.

## *Conclusion*

For the reasons stated, we find no error in defendant's convictions of the offense of conspiracy to commit armed robbery with a dangerous weapon and the offense of felonious breaking or entering. Due to the existence of sufficient evidence regarding felonious intent, the trial court properly denied defendant's motions to dismiss the charges against him. Accordingly, we reverse the decision of the Court of Appeals and order defendant's convictions to be reinstated.

REVERSED.