## STATE v. ALBERT KIRKLAND.
### (Filed 20 December, 1919.)

1. **Larceny—Definition—Criminal Law—Instructions—Appeal and Error—Reversible Error.**

   Larceny is the wrongful taking of the property of another with the intent to permanently deprive the owner, by the taker's converting it to his own use or for the benefit of a third person; and a charge to the jury that the intent is not an essential element of the offense, but that depriving the owner of the possession is sufficient, or that feloniously, in this sense, is doing an unlawful act willfully, is prejudicial and reversible error.

2. **Criminal Law—Instructions—Evidence—Appeal and Error—Reversible Error.**

   An instruction upon a criminal trial that if the contentions of the defendant satisfied the jury beyond a reasonable doubt, to render a verdict of acquittal is erroneous, the defendant having a right to an acquittal if they find in his favor upon all the evidence, that of the State, as well.

3. **Appeal and Error—Evidence—Nonsuit—Record.**

   The Supreme Court, on appeal, will not pass upon a motion for judgment as of nonsuit upon the evidence when the record shows that all the material evidence for its consideration was not set out therein.

APPEAL by defendant from *Ray, J.,* at the July Term, 1919, of SWAIN.

This is an appeal from a judgment pronounced upon a verdict of guilty of the charge of the larceny of certain lumber, the property of A. T. Dorsey.

There was evidence that about three years ago the prosecuting witness, Dorsey, procured a right of way from the defendant to erect and operate a flume over defendant's land for transporting lumber and wood, which was afterwards erected and operated by Dorsey. The flume ran something like one-half mile over the defendant's land, and prior to and at the time of the alleged larceny there were frequent jams in the flume, which caused the lumber and wood to be thrown out of the flume on the

defendant's land, and in close proximity to the creek. The lumber alleged to have been stolen was piled up in the barn and house of the defendant, which were both situated near the road where the public and Dorsey's hands passed and repassed, and could have been easily seen by any one. Eight or ten witnesses testified that the defendant was a man of good character, and in fairly good circumstances. The defendant sometimes broke jams in the flume in order to protect his land from overflow of water caused by the dam, as well as for the benefit of the prosecuting witness Dorsey. The defendant was a man of. something more than fifty years of age, and had never been indicted or charged with any criminal offense. His Honor charged the jury, among other things, as follows:

"It has been argued here that there must be a definition of larceny, which definition should include appropriating them to the use of the parties stealing them. That has no basis in the definition, because it is not the intention of appropriating to one's own use that makes a man guilty, but the fact that he deprives another of the possession of his goods, no matter whether it is his intention, it might be to destroy them or merely to aggravate and deprive the owner of the property, and necessarily to appropriate them to the use of the party having them." The defendant excepted.

"The taking must be felonious. Felonious, as the court understands it, is the doing of an unlawful act willfully. It becomes necessary that I give you the definition of willfully, because if the crime was committed, the act, in the first place, in this bill of indictment must be felonious. And the doing of that act, which, if committed, would be unlawful, must be done willfully, and the term willfully implies the doing of the act purposely and deliberately, in the violation of the law." The defendant excepted.

There was a motion for judgment of nonsuit, which was overruled, and the defendant excepted.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*
*Dillard & Hill, Sherrill & Harwood, and Frye & Frye for defendant.*

ALLEN, J. It will be observed that his Honor charged the jury: (1) That the intent to appropriate to his own use is not an essential element in larceny; (2) that depriving another of the possession of goods is sufficient; (3) that feloniously is doing an unlawful act willfully, which is not in accord with the authorities in this State and elsewhere, and more fitly describes a criminal trespass, in which the act must be done unlawfully and willfully (*S. v. Whitaker,* 85 N. C., 568), than larceny.

*Ruffin, C. J.,* says, in *S. v. Jesse,* 19 N. C., 297, feloniously "has no synonym," and "admits of no substitute," and *Battle, J.,* in *S. v. Sowls,* 61 N. C., 154, in defining robbery, which is larceny from the person by violence, says the taking "must be done *animo furandi,* with a felonious intent to appropriate the goods taken to the offender's own use. Roscoe's Cr. Ev., 895. Although a person may wrongfully take the goods, yet, unless he intended to assume the property in them, and to convert them to his own use, it will amount to a trespass only, and not to a felony. 1 Hale's P. C., 890."

In *S. v. Powell,* 103 N. C., 430, *Shepherd, J.,* reviews the authorities, and quotes from the leading text-books with approval as follows:

"It (the taking) must be done," says Foster, 124, "with a wicked, fraudulent intention, which is the 'ancient known definition of larceny: *Fraudulenta obstrectatio rei alienoe invito domino.'*

"*Lord Hale,* P. C., 508, says: 'As it is *cepit* and *asportavit,* so it must be *felonice* or *animo furandi;* otherwise, it is not felony, for it is the *mind* that makes the taking of another's goods to be a felony, or a bare trespass only; but because the intention and mind are secret, the intention must be judged by the circumstances of the fact.'

" 'The felonious intent, or *animus furandi,* means an intent fraudulently to appropriate the goods. Whether the intent existed or not is entirely a question for the jury, which, as in all other cases of intent, they must all infer from the words or acts of the defendant or the nature of the transaction.' Archbold Crim. Practice and Pl., 2 vol., 6 ed., 366-4.

"In his Pleading and Evidence, 3 Am. Ed., 173, Archbold thus defines the felonious intent: 'But larceny, as far as respects the intent with which it is committed, . . . may, perhaps, correctly be defined thus: where a man knowingly takes and carries away the goods of another, without any claim or pretense of right, with intent wholly to deprive the owner of them, and to appropriate or convert them to his own use.' "

Again, as to the charge that it is sufficient if the intent exists to deprive the owner of the possession instead of the property itself, in *S. v. Ledford,* a new trial was ordered because of an instruction, "That to constitute larceny as to the taking, that all that was necessary was to prove that the defendant took the property with intent to remove it out of the possession of the owner," and in *S. v. Lyerly,* 169 N. C., 378, the following charge was approved as "supported by the precedents": "That if they should find from the evidence, beyond a reasonable doubt, that the defendant obtained possession of the $50 bill, under the circumstances testified to by the prosecuting witness, with 'an existing felonious intent permanently to deprive the prosecutor of his ownership in the money, and to convert it to his own use, and in pursuance of such intent, and in the execution of such design' did as testified to by the prosecuting witness, they should return a verdict of guilty of larceny, as charged."

(The language "did as testified to by the prosecuting witness" is a summary by the court, and was not used by the presiding judge.)

In 17 R. C. L., 5, one of the latest authorities, and reliable, defines larceny: "As the felonious taking by trespass and carrying away of the goods of another, without the consent of the latter, and with the felonious intent permanently to deprive the owner of his property and to convert it to his, the taker's own use," a definition following the decisions in our State, and which we approve with the interpretation that the intent to convert to one's own use is met by showing an intent to deprive the owner of his property permanently for the use of the taker, although he might have in mind to benefit another.

His Honor also charged the jury, after stating certain contentions of · defendant, that, "If that satisfies you to your own satisfaction, it would be your duty to return a verdict of not guilty," a form of instruction disapproved in *S. v. Harrington,* 176 N. C., 716, because it "Was calculated to mislead the jury into the error that the guilt of the defendants turned upon whether the explanation was a satisfactory one; whereas, it should have been made to turn upon all the evidence, that of the State and the defendants, and the sole inquiry should have been whether the State had carried successfully its proper burden and satisfied the jury, beyond a reasonable doubt, of their guilt."

We have not overlooked the motion for judgment of nonsuit, but the record does not purport to give the entire evidence, and parts of the charge, stating the contentions of the State and defendant, to which there is no exception, show that much that is material has been omitted, and we cannot therefore pass on the motion.

We are of opinion that prejudicial error is shown in the instructions to the jury, and for this reason a new trial is ordered.

New trial.