STATE v. PARIS LUNSFORD AND EARL SAWYER.

(Filed 22 September, 1948.)

**1. Robbery § 1a—**

Robbery is the taking, with intent to steal. of the personal property of another, from his person or in his presence, without his consent or against his will, by violence or intimidation.

**2. Robbery § 3: Criminal Law § 53d—**

In a prosecution for robbery the court should charge that the taking of the property must be with a specific intent on the part of the taker to deprive the owner of his property permanently and to convert it to his own use, and an instruction merely that the taking must be with felonious intent is insufficient. G. S., 1-180.

**3. Robbery § 3: Criminal Law § 53g—**

Testimony of defendants in a prosecution for robbery that they took the pistol from prosecuting witness to prevent him from harming them or some other person. requires the court to submit the question of each defendant's guilt of simple assault to the jury as a lesser offense included in the crime charged, G. S., 15-169; G. S., 15-170, since such verdict would be justified in the event the jury should find that defendants took the pistol without intent to steal it, but were not warranted in doing so on the principle of self-protection.

APPEAL by defendants, Paris Lunsford and Earl Sawyer, from *Clement, J.,* and a jury, at July Term, 1948, of the Superior Court of BUNCOMBE.

The defendants were charged with robbery.

It was made to appear at the trial by the evidence of the State and that of the defendants that the defendants met the prosecuting witness, Jack Maney, for the first time at the Amos and Andy Cafe on the Weaverville highway in Buncombe County about four o'clock on the afternoon of Saturday, 10 July, 1948; that Maney was armed with a pistol; that the defendant Lunsford seized and held Maney while the defendant Sawyer took the pistol from him; that Sawyer then delivered the pistol to Lunsford, who carried it away against the wishes of Maney; that Lunsford was arrested at his home on the following day on the

charge of robbing Maney of the pistol; and that Lunsford then and there surrendered the pistol to the arresting officers.

The testimony of the State and that of the defendants diverged radically, however, with respect to the events preceding and accompanying the taking of the pistol. The State's sole evidence on this phase of the case came from the prosecuting witness Maney. He said: "We had a friendly conversation, no hard words anyway. I had a German semi-automatic pistol and I showed it to some of the boys in the front part of the restaurant before I went in the rest room. I don't know whether I showed it direct to these defendants. I did not point it at anybody or anything. After that I went into the rest room at the back. The defendants were in there. One of them grabbed me from behind and the other took the gun out of my right-hand pocket. It was Lunsford that grabbed me from behind. Sawyer took the pistol from me."

The other version of the affair was given by the defendants and their witness, Waldo Davis. The defendant Lunsford testified as follows: "The first time I saw Jack Maney he got out of his car and came in front of the restaurant. He pulled a pistol out of his pocket and was pointing it at an empty can. He did not shoot, but he acted like he was going to. He was intoxicated. Later, inside the restaurant, Jack Maney was drinking beer and showing the pistol around. . . . Earl Sawyer and I went into the rest room, and Waldo Davis and someone was already in there. . . . Jack Maney came in and pushed me to one side. I told him not to push me, . . . He said something to me, and we had some words. He jerked this pistol out of his front pocket and pointed it at me. I grabbed his arm to keep him from shooting me and Earl Sawyer took the pistol out of his hand. He was mad about it and wanted his gun, but I told him he was in no condition to have the gun, and I did not want him to shoot me or anybody else. Earl Sawyer told him that we would leave the gun there at the restaurant and he could get it on Monday. . . . I did not want the pistol and did not intend to keep it, but only took it to keep him from shooting me." The testimony of the defendant Sawyer and the witness Davis coincided with that of Lunsford. Sawyer expressly stated that he took the pistol from Maney "for the sole purpose of preventing him from shooting Paris Lunsford."

The jury found both of the defendants guilty of robbery "as charged in the bill of indictment." From judgment based on this verdict, the defendants appealed, assigning errors.

*Attorney-General McMullan and Assistant Attorneys-General Bruton, Rhodes, and Moody for the State.*

*Don C. Young for defendants, appellants.*

ERVIN, J. The defendants emphasize their exceptions to the charge. They insist, among other things, that the trial judge erred in failing to instruct the jury as to the felonious intent essential to the crime of robbery, and in restricting the jury to the return of either a verdict of guilty of robbery or a verdict of not guilty. The record presently presented compels us to concede that the position of the defendants in these respects is well taken.

Writers upon criminal law often suggest that robbery is merely an aggravated form of larceny. 54 C. J., Robbery, section 11. It has been defined with accuracy and clarity as "the taking, with intent to steal, of the personal property of another, from his person or in his presence, without his consent or against his will, by violence or intimidation." Miller on Criminal Law, section 123. This definition clearly comports with that sanctioned by our cases. *S. v. Bell,* 228 N. C., 659, 46 S. E. (2d), 834; *S. v. Burke,* 73 N. C., 83.

In his charge in the case at bar, the trial judge told the jury with commendable correctness that a person cannot be guilty of robbery in forcibly taking property from the person or presence of another unless the taking is with felonious intent. But he inadvertently failed to explain to the jurors, who were unfamiliar with legal standards, what constitutes the requisite felonious intent in the law of robbery. In the absence of any instruction from the court on this aspect of the case, the jury was necessarily forced to resort to its own notions for the significance of this element of the offense when it passed upon the all-important issue as to whether the defendants acted with felonious intent in taking the pistol from the prosecuting witness.

Inasmuch as an intent to steal is an essential element of the crime of robbery, the judge ought to have told the jury that in robbery, as in larceny, the taking of the property must be with a specific intent on the part of the taker to deprive the owner of his property permanently and to convert it to his own use. *S. v. Sowls,* 61 N. C., 151; *S. v. Kirkland,* 178 N. C., 810, 101 S. E., 560; 54 C. J., Robbery, section 49. It is plain that the judge failed to perform his statutory duty to declare and explain the law as to this substantial feature of the case. G. S., 1-180; *Lewis v. Watson, ante,* 20, 47 S. E. (2d), 484.

The evidence at the trial required the submission of the case to the jury. But under the charge and the testimony the court should have instructed the jury to return a verdict of guilty of robbery, or a verdict of guilty of simple assault, or a verdict of not guilty as to each defendant, depending entirely upon which one of such verdicts it found to be warranted by the facts. This is true because the jury might well have found that the defendants took the pistol without any intent to steal it, but that they were not justified in so doing by the principle of self-

protection. In such event, the jury could have convicted the defendants of simple assault as an included or lesser offense. G. S., 15-169, 15-170; *S. v. Bell, supra.*

For the reasons set out above, the defendants are awarded a

New trial.