STATE OF NORTH CAROLINA v. DONALD JAMES BENFIELD AND WAYNE HAROLD BENFIELD

No. 7025SC133

(Filed 19 May 1970)

**Criminal Law § 159— narration of evidence on appeal**

Appeal is dismissed for failure of the defendants to state the evidence in narrative form. Rule of Practice in the Court of Appeals No. 19(d).

APPEAL from *Thornburg, S.J.*, 15 September 1969 Special Criminal Term, CATAWBA County Superior Court.

The defendant, Donald James Benfield, was tried on two valid bills of indictment in which he was charged with conspiracy to commit forgery and conspiracy to utter forged instruments. The defendant, Wayne Harold Benfield, was tried on one valid bill of indictment in which he was charged with conspiracy to utter forged instruments.

At their trial by jury the defendants were represented by counsel. At the close of the State's evidence the defendants moved for judgment as of nonsuit, which motion was denied. From the verdicts of guilty as to both defendants and judgments pronounced thereon, the defendants gave notice of appeal to the Court of Appeals of North Carolina.

*Stroupe and Stroupe, by John C. Stroupe, Jr., for the defendants appellants.*

*Robert Morgan, Attorney General, and R. Bruce White, Jr., Assistant Attorney General, for the State.*

HEDRICK, J.

The defendants' sole assignment of error is that the court below committed error in refusing their motion for judgment as of nonsuit made at the close of the evidence.

Rule 19(d), Rules of Practice in the Court of Appeals of North Carolina, as amended 11 February 1969, requires that the evidence in the case on appeal be in narrative form. If the appellant fails to comply with the provisions of this rule, the Court, in its discretion, may dismiss the appeal. The only reference in the present case to the evidence taken in the court below is in the record and is as follows:

## "EVIDENCE IN NARRATIVE FORM

"These are criminal cases in which the defendant Donald James Benfield is charged in two bills of indictment, to-wit: Conspiracy to Forgery and Conspiracy to Utter Forged Instruments. The defendant Wayne Harold Benfield is charged in one bill of indictment, to-wit: Conspiracy to Utter Forged Instruments.

"In these criminal cases the State's Evidence tends to show one Byron McCollum living in the Town of Morganton, North Carolina, during the month of January, 1969. That at this time he was acquainted with the defendants Byrd Edgar Warlick, Donald James Benfield, Grover Cleveland Norman, Billy Dean Norman, Ben Choate, George Farris, and Vance Moore.

"That the defendant Ben Choate was living in Charlotte, North Carolina, at this time and was a printer by trade. He was employed at said time by Instant Copies Company in Charlotte.

"That during this time McCollum and defendants Moore, Donald Benfield, Warlick and Farris went to Charlotte and contacted the defendant Choate for the purpose of having some bogus insurance checks printed. The defendant Choate was told that these bogus checks were to be passed. The defendant Choate was given two guns by McCollum and the other defendants, at one of their meetings in Charlotte during the month of January, 1969.

"That McCollum and the named defendants took an insurance company check to the defendant Choate in Charlotte at this time for the purpose of having Choate print some of these checks. Choate agreed to print some of these checks on bonded paper he had. After these bogus checks were printed by Choate, McCollum and the other defendants passed them, receiving approximately FIFTEEN HUNDRED ($1500.00) DOLLARS.

"At about this time, McCollum, Moore and Warlick were looking for a genuine check to copy as was done with the insurance company check. That McCollum and Warlick shortly thereafter came in contact with the defendant Donald Benfield who was working for Broyhill Industries in Lenoir, North Carolina, and who had a genuine Broyhill payroll check made payable to the defendant Donald Benfield. McCollum, Donald Benfield, Warlick and Moore all examined this check and then examined some safety check paper that they had purchased previously in Charlotte, North Carolina, from Henley Paper Company. That they realized that the paper was not the right color to match the

genuine Broyhill check. So McCollum, Warlick, Moore and Farris went back to Charlotte to get the proper color of that safety check paper from Henley Paper Company. The color of this paper that was finally purchased from the Henley Paper Company was Primrose color.

"When this paper was purchased from the Henley Paper Company, McCollum used a fictitious name to-wit, Trans World Stereo Company. Immediately after acquiring this paper the defendant Choate was contacted in Charlotte. The paper and the genuine Broyhill payroll check were given to Choate at this time. It was agreed by McCollum, Donald Benfield, Warlick, Moore, Farris and Choate that TWO HUNDRED FIFTY (250) bogus Broyhill payroll checks would be printed on the primrose colored paper.

"After these Broyhill payroll checks were printed by Choate, Warlick picked them up in Charlotte and brought them to Morganton, North Carolina. Then Warlick contacted McCollum and told him he had the checks and that a certain couple by the name of Al Dougard and Sandra Onde were down from New Jersey and he wanted to get the checks distributed and cashed that weekend.

"Warlick told McCollum to contact Moore and meet him at Lowman's Motel in Hickory. McCollum contacted Moore and they went to Lowman's Motel in Hickory. When McCollum and Moore arrived at the Motel, Sandra Onde, Al Dougard, Byrd Warlick and Bobbie June Waller (McCollum's Mother) were there. This was on February 6, 1969. All of these parties proceeded to examine the bogus checks that Choate had printed. At this time the checks had not been filled out and a general discussion was had by the parties to use the bogus checks that could be filled out, distributed and cashed. At about this time Donald Benfield arrived at Lowman's Motel. And the parties continued to examine the bogus checks, discussing the quality of them and comparing them with the original check from Broyhill Industries that was made out to Donald Benfield. They also discussed who was to pass these checks and Donald Benfield said he had to get the names of some people that night who would help them pass them. Then Donald Benfield left Lowman's Motel and those remaining detected that the signature on the genuine check did not come through on the counterfeit checks. So McCollum took the original check and practiced

signing the name as it appeared on the original check 'Paul H. Broyhill.'

"That the defendant Al Dougard also signed the name of Paul H. Broyhill on some of these bogus checks. That Sandra Onde and Bobbie June Waller filled in the Broyhill Plant number and the date and the amount of the checks at this time. It was decided at this time that the names of the payees would not be filled in.

"That Al Dougard had brought with him from New Jersey some bogus New Jersey Driver Licenses. These driver licenses were filled out and given to the people who were to pass these checks.

"At about 10:30 o'clock PM Donald Benfield said he had a number of people that he was to pick up that night and he had better get on the road and he left.

"McCollum and Moore stayed at Lowman's Motel until about 11:30 o'clock PM discussing the next day's activities, looking more or less at the finished products of the checks except for the payee's name that had not been filled in at that time. When McCollum and Moore left, after Donald Benfield left, Al Dougard, Sandra Onde, Bobbie June Waller and Byrd Warlick remained. This was during the night of February 6, 1969.

"The following morning, February 7, 1969, Moore came by McCollum's home and picked him up and they returned to Lowman's Motel. When they arrived back at Lowman's Motel Al Dougard, Sandra Onde, Bobbie Waller and Byrd Warlick were still there. In a very few minutes the defendant Donald Benfield and Wayne Benfield drove up. About thirty minutes after the Benfields arrived, George Farris, Grover Norman and Billy Norman arrived at the motel. All of these parties met in two adjoining rooms in the Motel. At this time the checks were filled out for Grover Norman, Billy Norman and George Farris. They were given each fifteen (15) bogus checks and were also given bogus New Jersey driver licenses. The names of the payees in the bogus Broyhill checks were the same as the names of the licensees on the bogus New Jersey driver licenses.

"These three left immediately after receiving the bogus checks and driver licenses. It was understood that these three were going to the North Wilkesboro area to pass these checks.

"Subsequently it was decided by Warlick that the rest of the people there should leave Lowman's Motel and go to another

motel so that they would not draw any attention. This was about 10:00 o'clock AM. The parties left and went to Mackie's Motel in Conover, North Carolina. When they arrived, Warlick registered for two adjoining rooms. These parties discussed how the bogus checks would be cashed, who was going where, and so forth.

"It was decided that McCollum and Moore would go to Asheville to pass the bogus checks. That Warlick said he was going to call a man by the name of Owens Barrus to help him pass these checks. He said Barrus needed to make some extra money. Later that day Barrus arrived at Mackie's Motel and McCollum, Moore, Wayne Benfield, Onde, Dougard, started typing out the checks that were to be used. The names and amounts were filled in on the checks.

"After Barrus arrived he was given some of these bogus Broyhill checks and a bogus New Jersey driver license. It was agreed that the two Benfield brothers and Barrus were going to pass these checks together. Sandra Onde and Al Dougard and Warlick were going together in the Hickory area. It was agreed among the parties that after the checks were cashed they would all meet that same night at approximately 10:00 o'clock PM at Castle Bridge in Burke County. This was the 7th day of February, 1969.

"That at approximately 10:00 o'clock PM McCollum and Moore went to Castle Bridge in Burke County after having gone to Asheville and cashing a number of the Broyhill bogus checks. At Castle Bridge they met Donald Benfield, Wayne Benfield, Barrus, Billy Norman, Grover Norman, Warlick and Farris and while there they learned from one of the party that Al Dougard and Sandra Onde had been arrested in downtown Hickory while passing the bogus checks. Then the parties decided to leave Castle Bridge and go to a parking lot at the hospital which was located up the road from Castle Bridge.

"They later went on a dirt road in the vicinity of Valdese, North Carolina, for the burning of the existing checks, together with some of the bogus New Jersey Driver Licenses. From there they decided to go into Hickory and stop at Fran-Mar Motel.

"When they arrived there they registered for one room. This was in February, 1969, on the 7th. After they got into the room they took all the money from Donald Benfield and Warlick and put it on the bed and counted it. There was approximately

TWELVE THOUSAND ($12,000.00) DOLLARS which had been received."

This recital falls short of being a narrative of the evidence as required by Rule 19(d), Rules of Practice in the Court of Appeals of North Carolina. From this recitation it is impossible for us to determine from whom the evidence was being elicited, who was examining the witnesses, whether there was cross-examination, the purpose for which the witnesses were being examined, and exactly what the evidence was. This, rather than being a narration of the evidence, is a recitation of the events surrounding the arrest of these two defendants.

In *State v. Womack,* 251 N.C. 342, 111 S.E. 2d 332 (1959), it is stated:

"When the evidence adduced at the trial is not contained in the record, the appeal must be dismissed in the absence of error appearing upon the face of the record. Rule 19(4), Rules of Practice in the Supreme Court, 221 N.C. at page 556. *S. v. Griffin,* 246 N.C. 680, 100 S.E. 2d 49; *S. v. Powell,* 238 N.C. 550, 78 S.E. 2d 343; *S. v. Kirkland,* 178 N.C. 810, 101 S.E. 560; *S. v. Tyson,* 133 N.C. 692, 46 S.E. 838.

"The evidence set out in the statement of case on appeal is not sufficient to enable this Court to pass on the merits of the motion for judgment as of nonsuit. Furthermore, the judgment is supported by the verdict and the exception thereto cannot be sustained. *S. v. Barham, ante* 207; *S. v. Ayscue,* 240 N.C. 196, 81 S.E. 2d 403; *S. v. Sloan,* 238 N.C. 672, 78 S.E. 2d 738; *S. v. Oliver, supra.*"

The evidence in the record of the case on appeal is not sufficient to enable this Court to pass on the merits of the defendants' motion for judgment as of nonsuit. However, we have examined the record of the case on appeal and have found no error appearing on the record proper. For failure to comply with the rules of this Court the appeal of the defendants is dismissed.

Dismissed.

BRITT and PARKER, JJ., concur.