STATE OF NORTH CAROLINA v. JESSE LEE

No. 18

(Filed 26 January 1973)

1. Rape § 6— jury instructions — application of law to facts

Defendant in a rape and armed robbery case could not complain of the trial judge's charge on rape where the judge correctly defined and fully explained each essential element of the crime of rape and specifically applied the law to the possible factual situations presented by the conflicting evidence.

2. Robbery § 5— armed robbery — necessity for instruction on common law robbery

If the State's evidence shows an armed robbery as charged in the indictment and there is no conflicting evidence relating to the elements of the crime charged, an instruction on common law robbery is not required; hence, the trial court's failure to charge on common law robbery was proper since defendant's denial, not only that he robbed the victim by any means whatever but that he ever held a gun on her, constituted no evidence of his guilt of common law robbery.

3. Robbery § 5— armed robbery — instruction on intent — no error

In an armed robbery prosecution the trial judge did not err in failing to charge the jury that, in order to convict defendant, they must find that he took the victim's rings with the specific intent to convert them to his own use where the issue was not the intent with which the rings were taken, but whether they were taken at all.

BELATED appeal by defendant, Jesse Lee, from *Friday, J.,* 31 January 1972 "B" Session of MECKLENBURG; petition for certiorari allowed 31 July 1972.

Appellant, Jesse Lee, was indicted for the rape and armed robbery of Alice Mae Jones on 7 October 1971. Upon these charges he was jointly tried with Willie Huff, Jr., who was charged with the armed robbery of Alice Mae Jones and with assaulting her on 7 October 1971 with intent to commit rape.

State v. Lee

Evidence for the State tended to show:

About 11:00 p.m. on 6 October 1971 Alice Mae Jones was walking on Eleventh Street in Charlotte. Having visited her disabled mother-in-law Mrs. Jones was returning to her home at 282 Piedmont Court, where she lived with her husband and three children. As she passed along a low wire fence defendant suddenly put a gun to her head and threatened her life if she ran or hollered. With his arm around her neck and the gun at her head, he walked her down some steps into No. 18 Piedmont Court, where Huff was sitting on the floor in the front room. As he entered, defendant said to Huff, "I got one."

Defendant pushed Mrs. Jones down on the sofa, tore the clothes from her body and had intercourse with her forcibly and against her will while Huff held the gun on her. The two men then carried Mrs. Jones upstairs, where Huff unsuccessfully attempted to have intercourse with her. Thereafter defendant again had intercourse with her while Huff held the gun and threatened to blow out her brains "for the fun of it." The two men then took her engagement ring and her wedding ring from her finger.

After her rings had been removed Huff gave Mrs. Jones some ladies' clothes from a closet. As she was putting them on, a woman, later identified as Lillian Brown, entered the house and called upstairs. Huff shot down the stairs and, as Lillian Brown ran up the steps, Mrs. Jones ran down and out of the house. Because she had no telephone in her residence Mrs. Jones fled to the home of her neighbor, Mrs. Hester Bowden, at 277 Piedmont Court. There she called the police, to whom she reported that she had been raped by two Negro males.

In response to her call the police came and took Mrs. Jones with them to No. 18 Piedmont Court. Outside the front door they found a spent shotgun shell. Inside, on the living room floor, they found a broken lamp and some torn clothing, which Mrs. Jones identified as hers. In the plastered wall at the bottom of the stairway they observed a bullet hole and embedded pellets. Upstairs, two bedrooms "were messed up." Neither defendant nor Huff was present.

After inspecting the premises at 18 Piedmont Court, officers took Mrs. Jones to the hospital. The gynecologist who examined her found a small cut on her left inner thigh and seminal fluid in the vaginal vault. Four weeks earlier, after giving birth

to a baby, Mrs. Jones had had a tubal ligation. She testified that prior to the assault upon her she had not known either defendant Lee or Huff.

Officers apprehended defendant Lee about 1:30 a.m. on 7 October 1971 as he ran across Tenth Street toward Seventh Street.

Defendant Lee testified that he had known Mrs. Jones four or five months and had had relations with her prior to 6 October 1971; that he and she had arranged to meet at Apartment No. 18 on the night Mrs. Jones testified she was raped; that when she arrived and found Huff there she inquired whether defendant and Huff wanted her to go to a friend's house to get a girl for Huff; that they said, "No," and thereafter the three "just talked." Some time later, defendant said, Mrs. Jones voluntarily took off her clothes in the front room downstairs and inquired if defendant "was going to do anything." Notwithstanding, he never touched her. Defendant denied that he, at any time, held a gun on Mrs. Jones or that he walked her down the side of a fence with a gun at her head. He also testified that he did not take Mrs. Jones' rings off, and he never told Huff to take them; that when Lillian Brown entered the apartment he and Mrs. Jones were "discussing money affairs"; that Lillian Brown left and he and Mrs. Jones then went on out together.

The jury found defendant guilty as charged in the two indictments upon which he was tried. For the crime of rape defendant was sentenced to life imprisonment; for armed robbery, 10-15 years. From these judgments he appealed, assigning errors in the charge.

*Attorney General Morgan; Assistant Attorney General Ray; Associate Attorney General Speas for the State.*

*Lila Bellar for defendant appellant.*

SHARP, Justice.

The rape case is before this Court on direct appeal from the Superior Court under G.S. 7A-27(a). Because the armed-robbery case was tried at the same time, we certified it for initial appellate review by the Supreme Court under G.S. 7A-31(a).

[1]  Defendant's first assignment of error is to the following instruction: "If you find from the evidence and beyond a rea-

sonable doubt that the defendant, Jesse Lee, is guilty of rape as charged in the bill of indictment, it would be your duty to return such a verdict as charged in the bill of indictment." The contention is that in the "final mandate" the judge did not apply the law to the facts in the case.

Standing alone the preceding instruction would not fulfill the mandatory requirements of G.S. 1-180 (1969) that the judge "shall declare and explain the law arising on the evidence given in the case." A charge, however, must be considered contextually as a whole. *Lewis v. Barnhill,* 267 N.C. 457, 148 S.E. 2d 536 (1966) ; 7 Strong, North Carolina Index 2d *Trial* § 33, at 330 (1968). Immediately preceding the challenged instruction the judge had correctly defined and fully explained each essential element of the crime of rape, and he had also specifically applied the law to the possible factual situations presented by the conflicting evidence. Nothing had been left to the jury "to decide . . . according to its own notions." *Lewis v. Watson,* 229 N.C. 20, 24, 47 S.E. 2d 484, 487 (1948).

When considered as a whole it is quite clear that defendant has no cause to complain of his Honor's instructions upon the rape charge. On the contrary, in certain respects the instructions were more favorable to defendant than the evidence warranted.

[2] Defendant's second and third assignments of error relate to the court's instructions upon the charge of armed robbery. Assignment No. 2 presents the question whether the judge erred in failing to submit to the jury the question of defendant's guilt of common law robbery. The jury was instructed to return a verdict of "guilty of robbery with a firearm as charged in the bill of indictment or not guilty."

The essential difference between armed robbery and common law robbery is that the former is accomplished by the use or threatened use of a firearm or other dangerous weapon whereby the life of a person is endangered or threatened. G.S. 14-87 (1969) ; *State v. Bailey,* 278 N.C. 80, 178 S.E. 2d 809 (1971). In a prosecution for armed robbery the court is not required to submit the lesser included offense of common law robbery unless there is evidence of defendant's guilt of that crime. If the State's evidence shows an armed robbery as charged in the indictment and there is no conflicting evidence *relating to the elements* of the crime charged an instruction on

common law robbery is not required. *State v. Carnes*, 279 N.C. 549, 184 S.E. 2d 235 (1971); *State v. Cox*, 201 N.C. 357, 160 S.E. 358 (1931).

Defendant's denial, not only that he robbed Mrs. Jones by any means whatever but that he ever held a gun on her, constituted no evidence of his guilt of common law robbery. Defendant's second assignment of error is without merit. *State v. Bailey, supra.*

[3] Defendant's third assignment of error pertains to the court's charge on the elements of armed robbery. The instruction was that the jury would find defendant guilty of the robbery charged in the bill of indictment if they were satisfied beyond a reasonable doubt that by endangering or threatening the life of Mrs. Jones with a firearm defendant took her rings from her person, or in her presence, without her voluntary consent and carried them away; that at the time of the taking defendant knew he was not entitled to take this property and he intended to deprive her of its use permanently. Defendant asserts that to be guilty of robbery an accused must have taken the property "with a specific intent to deprive the owner of his property permanently *and to convert it to his own use.*" He contends that the trial judge committed prejudicial error when he omitted from his enumeration of the elements of robbery the words italicized within the preceding quotation. This contention is untenable.

Indubitably, the intent to steal is an essential element of robbery, and stealing has often been defined as the taking of the personal property of another with a specific intent on the part of the taker to deprive the owner of his property permanently and to convert it to his own use. *See State v. Norris*, 264 N.C. 470, 141 S.E. 2d 869 (1965); *State v. Lawrence*, 262 N.C. 162, 136 S.E. 2d 595 (1964); *State v. Lunsford*, 229 N.C. 229, 49 S.E. 2d 410 (1948). To define stealing in these words, however, is not a *sine qua non* to an explanation of robbery.

One who, knowing that he has no right to do so, takes and carries away the property of another with the intent to deprive the owner of his property permanently and to convert it to his own use is surely guilty of larceny. However, he is no less guilty if, when he took the property, his intention was to convert it to the use of another or to destroy it so that no one

State v. Lee

could use it. When he takes the property to accomplish a purpose of his own he takes it with the intent to convert it to his own use. To constitute larceny it is not required that the purpose of the taking be to convert the stolen property to the pecuniary advantage or convenience of the taker. It is sufficient if the taking be fraudulent and with the intent wholly to deprive the owner of his property. *State v. Smith,* 268 N.C. 167, 150 S.E. 2d 194 (1966); *State v. Kirkland,* 178 N.C. 810, 813, 101 S.E. 560, 561 (1919).

In the two cases upon which appellant relies, *State v. Lunsford, supra,* and *State v. Lawrence, supra,* the evidence for the defendants tended to negate any intent to steal. In *Lunsford,* the defendants contended they disarmed the prosecuting witness, who was intoxicated, only to keep him from shooting one of them, and that they had no intent to deprive him permanently of his pistol. In *Lawrence,* the defense was that the defendant was guilty only of forcible trespass; that he had taken from the prosecuting witness' wallet the exact amount which the witness owed him and which he had said he would be glad to pay him. In both cases a new trial was awarded because the court had failed to explain in certain terms, understandable to a layman, the essential felonious intent implicit in the expression "felonious taking."

As Justice Clifton L. Moore said in *State v. Spratt,* 265 N.C. 524, 144 S.E. 2d 569 (1965), "The comprehensiveness and specificality of the definition and explanation of 'felonious intent' required in a charge depends on the facts in the particular case. There must be some explanation in every case. But, where the evidence relied on by defendant tends *to admit the taking* but to deny that it was with felonious intent, it is essential that the court fully define the 'felonious intent' contended for by the State and also explain defendant's theory as to the intent and purpose of the taking, in order that the jury *may understandingly decide* between the contentions of the State and defendant on that point. . . . Where such defenses are specifically interposed and arise on the evidence, defendant is entitled to such explanation of the law as will serve to bring clearly into focus the conflicting contentions." *Id.* at 526-27, 144 S.E. 2d at 571-72 (citation omitted) (emphasis added).

In this case defendant denies that he took Mrs. Jones' rings or that he aided Huff in taking them. The issue was not

the intent with which they were taken, but whether they were taken at all.

In the trial below, we find

No error.