STATE OF NORTH CAROLINA v. JESSE ELY BROWN, JR. AND PALMER JUNIOR COFFEY

No. 61

(Filed 6 May 1980)

1. **Criminal Law § 92.5— several crimes committed pursuant to single scheme — severance properly denied**

The trial court did not err in denying defendant's motion to sever charges of breaking and entering, larceny and robbery with firearms, since the theory of the State's case was that defendant broke into and entered a home from which he took a stereo for the purpose of selling such stolen property, and, pursuant to this single plan or scheme, he went to an apartment one week later to sell the stolen property and, while there, committed the crime of robbery with firearms when he obtained $300 from a person who claimed to be the owner of the stereo.

State v. Brown

**2. Robbery § 4— robbery with firearms—sufficiency of evidence**

Evidence of felonious intent was sufficient to support a conviction of robbery with firearms, and there was no merit to defendant's contention that he did not know or have reasonable grounds to know that he was not entitled to the possession of the stereo in question or that the stereo he took was in fact the property of the person he allegedly robbed where the State's evidence tended to show that defendant broke into a home and stole a stereo which he tried to sell a week later; a person claiming to be the owner of the stereo demanded its return; defendant demanded $300 at gunpoint before he relinquished possession of the stereo; defendant contended that he bought the stereo, which he valued at $900, from a stranger at night for $300; defendant contended that when he first entered the apartment where the alleged robbery occurred, a man claimed ownership of the stereo and offered to show defendant documents proving his ownership; and defendant stated that he did not know for sure if the stereo belonged to the robbery victim, but defendant felt he was entitled to either the stereo or the money he had paid for it.

**3. Robbery § 5.4— robbery with firearms—failure to instruct on assault with deadly weapon—error**

In a prosecution for robbery with firearms where the evidence tended to show that defendant relinquished possession of a stereo to the person claiming ownership only after that person handed over $300 while defendant held a gun on him, the trial court erred in failing to submit to the jury the lesser included offense of assault with a deadly weapon, since defendant asserted a claim of right in the stereo and there was therefore conflicting evidence as to felonious intent.

**4. Robbery § 5.1— robbery with firearms—felonious intent—instructions inadequate**

In a prosecution for robbery with firearms, the trial court in the jury instructions did not clearly bring into focus the conflicting contentions arising from the evidence as to the absence or presence of felonious intent.

**5. Robbery § 4.7— robbery with firearms—aiding and abetting—insufficiency of evidence**

In a prosecution for robbery with firearms where the State rested its case against one defendant upon the theory that he aided and abetted the other defendant in the commission of the crime, the trial court erred in denying the first defendant's motion for nonsuit, though defendant was present at the crime scene and was apparently on friendly terms with the defendant who actually committed the robbery, since there was no evidence that defendant by word or act communicated an intent to aid the actual perpetrator should assistance become necessary.

ON CERTIORARI. Defendants Brown and Coffey were charged in separate indictments with robbery with firearms, and breaking and entering, and larceny. The charges were consolidated for trial.

The State offered evidence tending to show that on 26 January 1978 the home of David Pruett and his wife Carolyn was broken into, and several items of personal property including a stereo system were taken from their home. After reporting the theft to the Sheriff's Department, David Pruett also told his friend Jeff Winkler of the occurrence. Winkler agreed to make inquiries so as to locate the missing property.

On 2 February 1978, J. D. Bushburger came to Winkler's apartment, and Winkler asked him if he knew where a stereo system could be bought. Bushburger then made several trips to an automobile, where defendant Brown was sitting, and obtained information concerning an available stereo. From the information furnished, Winkler concluded that the stereo might be the one taken from the Pruett home. He then made arrangements for the stereo to be brought to his apartment and called David Pruett to come to the apartment. Pruett and his wife Carolyn arrived at the Winkler apartment at about 11:30 p.m., and shortly thereafter defendants Brown and Coffey arrived, accompanied by Forrest Menton and J. D. Bushburger. Brown and Menton brought in the stereo system, and immediately thereafter Pruett, armed with a knife, stood up and told defendant Brown that the stereo was his. He further stated that he had receipts and serial numbers to prove his ownership. He said that Brown was not going to leave with the stereo unless it was over his dead body. Brown replied, "It might be that way." After some further discussion, Brown left the apartment and returned with a shotgun, pointing it at Pruett's head. At that time, Pruett was standing at the closed apartment door, and when he looked through the glass window of the door, he saw Brown pointing the shotgun at his head. He asked Brown, "What are you going to do, blow my head off?" Brown replied, "Well, I might." Pruett then let Brown into the apartment, and they returned to the living room. Brown waved the gun in an arc so that it was temporarily pointed at some of the occupants of the room but did not actually aim or hold the gun on anyone. Brown then said that he had bought the stereo for $300, and he wanted that sum before they left. He did not make it clear where he had purchased the stereo but finally said that he bought it from a black man named Guy Patterson. At this point, Pruett gave Brown $300, and Brown and his companions departed.

The State's evidence further tended to show that defendant Coffey did not bring any parts of the stereo into the apartment, that he did not make any threats of any kind, and that he did not communicate with or assist Brown in any manner. There was some evidence that Coffey stated that he had $100 in the stereo and that he made some statement as to whether the stereo was purchased.

Defendant Brown testified in his own behalf and stated that he bought the stereo from a man named Guy Patterson for the sum of $300, $100 of which he had borrowed from Coffey. He said that Patterson wanted to sell the stereo because he and his wife were breaking up. When Pruett told him that the stereo had been stolen from him, Brown replied that he had paid for the property and did not know that it was stolen. He left the apartment and obtained his gun because he was frightened by the knife displayed by Pruett, and because another occupant of the apartment had a poker in his hand. He did not point the gun at anyone but held it like a club. He told Pruett that he wanted either the $300 or to take the stereo back. Thereafter, Pruett gave him $300, and after a friendly visit, he and his companions left. He did not feel that a robbery had been committed when he left the apartment that night. He further testified:

> I didn't know how much the stereo was actually worth. Mr. Pruett did have documents which he offered to show me which I did not look at because I believed he had the documents to prove it was his. I said I either wanted my money or the stereo back when I was speaking to Mr. Pruett on the night of February 2, 1978. I didn't know for sure that it was Mr. Pruett's stereo, but I took his word for it when he said it was. I felt that I was entitled to David Pruett's stereo because I had paid cash money for it. I don't know whether or not buying it from a thief gives me a better title than one who bought it from a true owner because I didn't know I was buying it from a thief.

On cross-examination by Mr. Applefield, he stated:

> Mr. Coffey never did get out of the car when we met Gary Patterson between Lenoir and Hickory near the service station. He did not even help carry the stereo in to the Pruetts' house and he never looked at the stereo before I car-

ried it in to the Pruett house. Mr. Coffey did not assist me in getting the gun or anything else.

Each defendant was found not guilty of breaking, entering and larceny. The jury returned verdicts finding defendant Brown guilty of robbery with a firearm and finding defendant Coffey guilty of common law robbery. Each defendant appealed, and the Court of Appeals dismissed their appeals for failure to comply with the appellate rules. On 23 April 1979, defendants filed a petition for writ of certiorari with the Court of Appeals which was denied on 27 August 1979. Defendants on 24 September 1979 filed petitions for writ of certiorari and for discretionary review pursuant to G.S. 7A-31 with this Court. On 8 January 1980, we denied defendants' petition for discretionary review and allowed defendants' petition for writ of certiorari. We now treat defendants' petition for writ of certiorari as a motion pursuant to G.S. 7A-31 to review the cause on its merits prior to review by the Court of Appeals and allow that motion.

*Rufus L. Edmisten, Attorney General, by J. Chris Prather, Associate Attorney, and Robert W. Newsom III, Assistant Attorney General, for the State.*

*Richard E. Mattar for defendant appellant Brown.*

*Gerald I. Applefield for defendant appellant Coffey.*

BRANCH, Chief Justice.

### Appeal of Defendant Brown

[1] Defendant Brown first assigns as error the denial of his motion to sever the charged offenses.

G.S. 15A-926 in part provides:

*Joinder of offenses and defendants.* —(a) Joinder of Offenses.— Two or more offenses may be joined in one pleading or for trial when the offenses, whether felonies or misdemeanors or both, are based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan. Each offense must be stated in a separate count as required by G.S. 15A-924.

This statute, which supplanted G.S. 15-152 and was effective 1 July 1975, permits joinder of offenses which are based on a series of acts or transactions "constituting parts of a single scheme or plan" if the joinder does not hinder or deprive a defendant of his ability to present his defense. The question before the court on a motion to sever is whether the offenses are so separate in time and place and so distinct in circumstances as to render a consolidation unjust and prejudicial. Whether offenses should be joined is a matter addressed to the sound discretion of the trial judge. *State v. Greene*, 294 N.C. 418, 241 S.E. 2d 662 (1978).

Here the theory of the State's prosecution was that on 26 January 1978 defendant Brown broke into and entered the Pruett home and took the stereo for the purpose of selling the stolen property. Pursuant to this single plan or scheme, he went to the Winkler apartment on the night of 2 February 1978 to sell the stolen property, and while there committed the crime of robbery with firearms when he obtained $300 from David Pruett.

Under the facts of this case, we cannot say that the trial judge abused his discretion in denying defendant's motion to sever or that defendant has shown any resulting prejudice.

Furthermore, G.S. 15A-927(a)(2) provides:

If a defendant's pretrial motion for severance is overruled, he may renew the motion on the same grounds before or at the close of all the evidence. *Any right to severance is waived by failure to renew the motion.* [Emphasis added.]

This record discloses that defendant failed to renew his motion at the close of all the evidence and thereby waived his right, if any, to severance. However, defendant takes the position that his motion for appropriate relief, filed after judgment, amounted to a renewal of his motion to sever at the close of all the evidence. A motion for appropriate relief, by the terms of the statute, is made after the verdict is rendered. G.S. 15A-1414. A motion made after the verdict comes too late to avoid the waiver provision of G.S. 15A-927(a)(2).

[2] Defendant Brown next contends that the trial judge erred in denying his motions to dismiss the charge of robbery with firearms and in denying his subsequent motion for appropriate

relief. G.S. 14-87 of the General Statutes governs the crime of robbery with firearms and provides as follows:

> Any person or persons who, having in possession or with the use or threatened use of any firearms or other dangerous weapon, implement or means, whereby the life of a person is endangered or threatened, unlawfully takes or attempts to take personal property from another or from any place of business . . . shall be guilty of a felony.

Robbery with firearms is a legislative outgrowth of common law robbery, which is the felonious taking of money or goods of any value from the person of another or in his presence, against his will, by violence or by putting him in fear. *State v. Moore*, 279 N.C. 455, 183 S.E. 2d 546 (1971). G.S. 14-87 does not create a new offense, but provides for a more serious punishment when firearms or other dangerous weapons are used. *State v. Black*, 286 N.C. 191, 209 S.E. 2d 458 (1974).

A motion to dismiss is governed by the same rules as motions for judgment as of nonsuit. The question presented by the motion is whether there is sufficient evidence to send the case to the jury and to support a verdict of guilty of the charged offense. *State v. Cooper*, 275 N.C. 283, 167 S.E. 2d 266 (1969); *State v. Stewart*, 292 N.C. 219, 232 S.E. 2d 443 (1977).

Initially, we note that there is ample evidence that defendant Brown by the use or threatened use of a deadly weapon took money in the amount of $300 from David Pruett against his will and by putting him in fear. Even so, defendant argues that the State has failed to prove the essential element of felonious intent.

Felonious intent is an essenital element of the crime of robbery with firearms and has been defined to be the intent to deprive the owner of *his goods* permanently and to appropriate them to the taker's own use. *State v. Norris*, 264 N.C. 470, 141 S.E. 2d 869 (1965); *State v. Lunsford*, 229 N.C. 229, 49 S.E. 2d 410 (1948).

Defendant argues that he did not know or have reasonable grounds to know that he was not entitled to the possession of the property or that the property that he took was in fact the property of David Pruett. The crux of the question presented by this

assignment of error is whether there is any evidence of felonious intent.

This Court considered the question of felonious intent in the case of *State v. Sowls*, 61 N.C. 151 (1866). There the defendant was charged with common law robbery. The State offered evidence tending to show that the defendant, who mistakenly thought he was acting under the orders of Captain Meares of the Home Guard, entered a dwelling and by force took a sword for the purpose of disarming one Stanly and not for the purpose of appropriating it to his own use. Stanly was not present, but his father and wife delivered the sword to the defendant out of fear. At trial, counsel for the defendant requested the Court to instruct the jury that if the defendant acted under the order of Meares, believing that he had a lawful military command, they should acquit him, whether Meares was authorized to give such orders or not. The court declined to give the charge, and the defendant was convicted. In granting a new trial, the Court in part stated:

> This offense is defined to be "a felonious taking of money or goods of any value from the person of another, or in his presence, against his will, by violence, and putting him in fear." 2 East, P. C., 707; Roscoe's Cr. Ev., 890.

> It must be done *animo furandi*, with a felonious intent to appropriate the goods taken to the offender's own use. . . .

> \*    \*    \*

> If the prisoner were acting in obedience to orders issued by the captain of a company of that guard, or *bona fide* thought that he was acting under such orders, and in obedience to them took the prosecutor's sword, not for the purpose of appropriating it to his own use, but solely with the view to disarm the prosecutor, he could not be held to have been guilty of robbery, no matter how wrongfully he may have acted. Under such circumstances the *animus furandi* would be as much wanting as it was in *Hall's case*, 3 Car. & P., 409 (14 Eng. C. L. Rep., 337), which is thus stated by Mr. Roscoe: The prisoner had set wires in which game was caught. The gamekeeper finding them, was carrying them away, when the prisoner stopped him, and desired him to give them up. The gamekeeper refused, upon which the prisoner lifting up a

large stick, threatened to beat out his brains if he did not deliver them. The keeper, fearing violence, delivered them. Upon an indictment for robbery, Vaughan, Baron, said: "I shall leave it to the jury to say whether the prisoner acted under an impression that the wires and the pheasant were his own property; for, however, he might be liable to penalties for having them in his possession, yet if the jury think that he took them under a *bona fide* impression that he was only getting back the possession of his own property, there was no *animus furandi*, and the prosecution must fail." The prisoner was acquitted.

61 N.C. at 153-55.

The Court also ordered a new trial in *State v. Curtis*, 71 N.C. 56 (1874), so that the jury might find whether the defendant who was charged with robbery took the property with felonious intent. In that case the Court said:

In the case before us the special verdict states what was done, but the intent is not stated. And it is very evident that that was the difficulty they had in coming to a general verdict. They could not satisfy themselves as to the intent. Was it the purpose to steal, or was it a Christmas frolic. Now that is not a question of law, but it is a question of fact which the jury ought to have found.

*Id.* at 59.

Here the evidence discloses that defendant Brown, according to his own testimony, had bought a stereo in the nighttime, from a man he had not previously known, for the sum of $300. Defendant placed a value on this property of approximately $900. He testified that, when he first entered the Winkler apartment, Mr. Pruett told him that the stereo belonged to him and that Pruett offered to show him documents to prove his ownership. He stated that he did not know for sure that it was Mr. Pruett's stereo, but he felt he was entitled to either the stereo or the money he had paid for it. He did not know he was buying it from a thief.

Applying the well-recognized rule that upon motion for nonsuit in a criminal action, the evidence must be considered by the court in the light most favorable to the State and the State must be given the benefit of every reasonable inference to be drawn

from the evidence, we hold that there was sufficient evidence to permit the jury to reasonably infer that defendant by the threatened use of a shotgun feloniously took the sum of $300 in money from David Pruett against his will by putting him in fear.

The trial judge correctly denied defendant's motions for dismissal and his motion for appropriate relief.

[3] Defendant assigns as error the failure of the trial judge to submit and charge upon the offense of assault with a deadly weapon.

Assault with a deadly weapon is a lesser included offense of robbery with firearms, and the jury may acquit as to the greater charge and return a verdict as to the lesser if the evidence warrants such a finding. However, it is not necessary to submit the lesser included offense if the evidence discloses no conflicting evidence relating to the essential elements of the greater crime. *State v. Hicks*, 241 N.C. 156, 84 S.E. 2d 545 (1954); *State v. Holt*, 192 N.C. 490, 135 S.E. 324 (1926). When there is conflicting evidence of the essential elements of the greater crime and evidence of a lesser included offense, the trial judge must instruct on the lesser included offense even where there is no specific request for such instruction. An error in this respect will not be cured by a verdict finding a defendant guilty of the greater crime. *State v. Riera*, 276 N.C. 361, 172 S.E. 2d 535 (1970); *State v. Wagoner*, 249 N.C. 637, 107 S.E. 2d 83 (1959); *State v. Burnette*, 213 N.C. 153, 195 S.E. 356 (1938).

Defendant argues that the evidence shows that defendant asserted a claim of right in the stereo and therefore there was conflicting evidence as to felonious intent. We agree. Although there was evidence of all the essential elements of the crime of robbery, defendant's evidence asserting a claim of ownership of the stereo created a conflict in the evidence as to felonious intent. There certainly was ample evidence of the lesser included crime of an assault with a deadly weapon. Thus, defendant was entitled to a charge on the crime of assault with a deadly weapon in order "to have the different views arising on the evidence presented to the jury upon proper instructions. . . ." *State v. Childress*, 228 N.C. 208, 210, 45 S.E. 2d 42, 44 (1947).

[4]  Finally, defendant contends that the trial judge did not adequately charge on the element of felonious intent. He argues that the court failed to clearly explain defendant's theory of defense and his contentions as to his intent and purpose in taking the stereo.

G.S. 15A-1232 provides:

> *Jury instructions; explanation of law; opinion prohibited.*—In instructing the jury, the judge must declare and explain the law arising on the evidence. He is not required to state the evidence except to the extent necessary to explain the application of the law to the evidence. He must not express an opinion whether a fact has been proved.

In the initial portion of the charge, Judge Howell stated defendant's contentions as to felonious intent in the following language:

> [Defendant] did not intend to rob or hurt anyone, but simply to obtain his three hundred dollars. And that at no time did he have the intent to rob or steal anything that wasn't his, but to obtain only such money as he had tied up in the stereo component system there at the Pruett home in which he had brought there.

The court thereafter in defining the crime of robbery with firearms explained felonious intent with this language:

> In this connection, the term "felonious taking" means a taking with the felonious intent on the part of the taker to deprive the owner of his property permanently and to convert it to the use of the taker, *the taker knowing that he is not entitled to take the property.* [Emphasis added.]

In his final mandate to the jury on the charge of robbery with firearms, Judge Howell in pertinent part instructed:

> [I]f you find from the evidence and beyond a reasonable doubt that on the 2nd day of February, 1978, the defendant, Jesse Brown, feloniously took and carried away three hundred dollars from the person of David Pruett . . . and that defendant did so with the specific intent on his part to deprive the owner of his property permanently and to convert it to the defendant's own use, the *defendant knowing that he was not*

*entitled to take it,* it would be your duty to return a verdict of guilty of robbery with a firearm. [Emphasis added.]

In our opinion, Judge Howell in his charge correctly defined the crime of robbery with firearms; however, there remains the question of whether, under the facts of this case, he clearly brought into focus the conflicting contentions arising from the evidence as to the absence or presence of felonious intent.

"The comprehensiveness and specificity of the definition and explanation of 'felonious intent' required in a charge depends on the facts in the particular case." *State v. Spratt,* 265 N.C. 524, 526, 144 S.E. 2d 569, 571 (1965); *see also State v. Lawrence,* 262 N.C. 162, 136 S.E. 2d 595 (1964).

*Spratt* and *Lawrence* highlight this rule of law in that, in each instance, this Court, speaking through Moore, J., applied the same principles of law and reached differing results because of the facts in the respective cases.

In *Spratt* the defendant was charged with robbery, and the State's evidence tended to show that defendant took money from the cashier of a store by the threatened use of a pistol. The defendant's sole defense was alibi. The court instructed the jury:

[I]f the defendant armed with a pistol drew it on and pointed it at Mr. Blackmon for the intention and purpose of taking money from his cash register by force and against his will, and if he actually made an overt effort to take money or any part of it, and if in doing so it was by force and against the will of Mr. Blackmon and if his life was in danger or threatened, the crime of attempt to commit robbery under this Statute would have been complete.

265 N.C. at 526, 144 S.E. 2d at 571.

The defendant challenged the adequacy of the charge on the element of felonious intent. The Court in finding no error in the charge stated:

[W]here the evidence relied on by defendant tends to admit the taking but to deny that it was with felonious intent, it is essential that the court fully define the "felonious intent" contended for by the State and also explain defendant's

theory as to the intent and purpose of the taking, in order that the jury may understandingly decide between the contentions of the State and defendant on that point. In other words, where the evidence is susceptible of conflicting inferences on the question of intent, develops a direct issue on that point and makes intent the battleground of the case, full and explicit instructions on this phase is required. [Citation omitted.]

\*    \*    \*

The *evidence* did not raise a direct issue as to intent. The court told the jury, in effect, that before they could return a verdict of guilty, they must find that defendant attempted to take the property with "intent to rob." . . . The word "rob" was known to the common law and the expression "intent to rob" is a sufficient definition of "felonious intent" as applied to the robbery statute, in the absence of evidence raising an inference of a different intent or purpose.

*Id.* at 526-27, 144 S.E. 2d at 571-72.

In *Lawrence* defendant also assigned as error the failure of the trial judge to adequately define and apply the element of "felonious taking" to the facts of the case. Holding this to be error, the Court concluded:

In the instant case defendant and the prosecuting witness had been drinking. Defendant told prosecuting witness that he owed him something and he (defendant) would get it himself. In the light of all of the circumstances disclosed by the State's evidence, a contention by defendant that his actions amounted only to a forcible trespass may seem unreasonable indeed, but the weight and reasonableness of the evidence is for the jury, and defendant has the right to have the jury consider the case in accordance with his theory of the legal effect of his acts if his theory is supported by any permissible inference to be drawn from the evidence. *State v. Guss*, 254 N.C. 349, 118 S.E. 2d 906. The learned judge inadvertently failed to give a legal explanation of the term "felonious taking," and to apply it to the facts. This was error which entitles defendant to a new trial.

262 N.C. at 168, 136 S.E. 2d at 600.

In the case *sub judice*, there was evidence susceptible of conflicting inferences as to the question of defendant's intent which raised a direct issue on that point. We therefore are of the opinion, and so hold, that the trial judge did not fully and adequately explain the law and apply it to the facts so as to clearly bring into focus defendant's contentions and his theory of defense.

For reasons stated, there must be a new trial as to defendant Brown.

## Appeal of Defendant Coffey

[5] Defendant Coffey assigns as error the failure of the trial judge to grant his motion for judgment as of nonsuit. Counsel for defendant Coffey moved for judgment as of nonsuit at the close of State's evidence and moved to dismiss at the close of all the evidence. The motions were denied.

When a motion for judgment as of nonsuit or a motion to dismiss is lodged in a criminal action, the court must consider all the evidence actually admitted, whether competent or incompetent, in the light most favorable to the State. All contradictions or discrepancies must be resolved in its favor, and it must be given the benefit of every reasonable inference to be drawn from the evidence. When all the evidence is so considered, it is for the court to decide whether there is sufficient evidence to support a finding that the charged offense has been committed and that the defendant was the perpetrator of the offense. If, when so considered, the evidence is only sufficient to raise a suspicion or conjecture that the offense has been committed or that the defendant committed the charged offense, then the motion for judgment as of nonsuit or the motion to dismiss should be allowed. *State v. Cutler*, 271 N.C. 379, 156 S.E. 2d 679 (1967). *See also State v. Hankerson*, 288 N.C. 632, 220 S.E. 2d 575 (1975), *reversed on other grounds*, 432 U.S. 233, 53 L.Ed. 2d 306, 97 S.Ct. 2339 (1977).

In the case before us, the State rests its case on the charge of robbery with firearms against defendant Coffey upon the theory that he aided and abetted in the commission of the crime. In support of this position, the State relies heavily upon the case of *State v. Sanders*, 288 N.C. 285, 218 S.E. 2d 352 (1975), *cert. denied*, 423 U.S. 1091 (1976). In *Sanders* the defendant was charged with malicious injury to occupied personal property and

willful and malicious injury to Albert Stout, Jr., by means of an explosive device. The State proceeded upon the theory of aiding and abetting and offered evidence tending to show that the defendant was present when a bomb was placed in S.B.I. Agent Stout's car, and was at that time seated in a nearby automobile guarding Jewel Hutton, who testified as a State's witness at trial and averred that he was a police informer. When the defendant in the company of Hutton, Jack Sellers and Otis Blackmon arrived at the place where Stout's automobile was parked, Blackmon and Sellers left the car carrying a paper bag in which the defendant had earlier seen dynamite and wiring. Blackmon and Sellers raised the hood of Agent Stout's automobile and worked there for about ten minutes and returned to the car without the paper bag. The four left together. At about 8:00 a.m. on the morning of 10 September 1974, Agent Stout entered his automobile and when he turned his key in the ignition, he was seriously injured by an explosion. This Court in upholding the trial judge's denial of defendant's motion for judgment as of nonsuit stated:

> The mere presence of the defendant at the scene of the crime, even though he is in sympathy with the criminal act and does nothing to prevent its commission, does not make him guilty of the offense. *State v. Rankin*, 284 N.C. 219, 200 S.E. 2d 182 (1973); *State v. Gaines*, 260 N.C. 228, 132 S.E. 2d 485 (1963). To support a conviction, the State's evidence must be sufficient to support a finding that the defendant was present, actually or constructively, with the intent to aid the perpetrators in the commission of the offense should his assistance become necessary and that such intent was communicated to the actual perpetrators. The communication or intent to aid, if needed, does not have to be shown by express words of the defendant but may be inferred from his actions and from his relation to the actual perpetrators. *State v. Hargett*, 255 N.C. 412, 121 S.E. 2d 589 (1961); *State v. Holland*, 234 N.C. 354, 67 S.E. 2d 272 (1951).

*Accord: State v. Scott*, 289 N.C. 712, 224 S.E. 2d 185 (1976). Here the State strongly contends that defendant's relation to the actual perpetrator of the armed robbery and his actions at the scene of the crime communicated an intent to aid defendant Brown in the commission of the crime.

It is true that defendant Coffey was present at the scene of the alleged crime and was apparently on friendly terms with the defendant Brown. This is not enough to permit the jury to find Coffey guilty on the theory of aiding and abetting. *State v. Scott, supra.* The only additional evidence which might permit an inference that defendant Coffey intended to aid defendant Brown is that Coffey had loaned Brown $100 of the purchase price of the stereo and had made some statement as to where the stereo was obtained. In considering the weight of all the evidence, it must be borne in mind that the evidence overwhelmingly shows that defendants Brown and Coffey initially came to the Winkler apartment for the sole purpose of selling the stereo. It was only after David Pruett displayed a knife that defendant Brown left the apartment and returned armed with a shotgun. This was the beginning of the crucial period as to defendant Coffey's innocence or guilt on the charge of robbery with firearms. From the moment that defendant Brown returned to the Winkler apartment with the shotgun, we are unable to find any evidence which would support a reasonable inference that defendant Coffey did anything to indicate or communicate to defendant Brown an intent to aid him in the commission of the crime of robbery with firearms should his assistance be necessary. To the contrary, the victim of the alleged crime stated that defendant Coffey "didn't hardly move, he was standing behind the couch and he never did really move." Further, Pruett's wife testified, "Palmer Junior Coffey never touched the gun and didn't communicate or assist Jesse Brown." The State's witness Jeff Winkler said, "Junior Coffey never threatened me in any way and I don't even recall him saying anything."

Obviously, *Sanders* and instant case are distinguishable. In *Sanders* there is ample evidence that defendant was present at the scene, actually assisting the actual perpetrators of the crime with knowledge of their plan to commit the crimes. Here there was no evidence that defendant even knew that defendant Brown intended to commit the crime of armed robbery. There was no evidence that he by word or act communicated an intent to Brown to aid him should assistance become necessary.

In our opinion, all of the evidence in this case was only sufficient to raise a suspicion that defendant Coffey might have been

guilty of the charged crime. Such evidence is not sufficient to repel defendant Coffey's motion for judgment as of nonsuit.

The verdict and judgment in *State v. Palmer Junior Coffey*, No. 78-CR-348 are vacated, and it is ordered that the action in that case be dismissed.

As to defendant Coffey, reversed.

As to defendant Brown, new trial.